UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br>        Plaintiff,<br><br>        v.<br><br>SOPHOS INC.,<br>        Defendant. | Case No. 14-cv-01197-WHO<br><br>**ORDER DENYING MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 26 |

       Finjan, Inc. alleges that Sophos Inc. has infringed eight of its patents. The companies have squared off in litigation before in the United States District Court for the District of Delaware, where Sophos prevailed at trial in 2012. Sophos wants to transfer this action to the District of Delaware, arguing that the judicial economy of transfer outweighs any consideration in favor of maintaining the action here. But both companies have offices in the Northern District of California, and this is one of six lawsuits Finjan has filed here. I heard argument on June 18, 2014 and conclude that Sophos has not met its burden of demonstrating that the convenience and justice factors favor transferring this case to the District of Delaware. Its Motion to Transfer is DENIED.

## BACKGROUND

       Finjan, Inc. ("Finjan") alleges that Sophos Inc. ("Sophos") infringed United States Patent Nos. 8,141,154 ("the '154 patent"), 6,154,844 ("the '844 patent"), 7,757,289 ("the '289 patent"), 7,613,926 ("the '926 patent"), 7,613,918 ("the '918 patent"), 6,804,780 ("the '780 patent"), 8,677,494 ("the '494 patent"), and 8,566,580 ("the '580 patent") (collectively the "patents in suit"). First Amended Complaint ("FAC") (Dkt. No. 15) ¶ 40.[1] The patents in suit address

---

[1] Finjan Software, Ltd., Finjan's parent company, is listed as the assignee on the face of the '780, '918, '926, and '844 patents. *Id.*, Exs. A, C, E, F. Finjan, Inc. is listed as the assignee on the face

technology for computer and network security. *Id.* Finjan contends that Sophos indirectly and directly infringed the patents in suit through the sale and use of Sophos computer and network security products, including antivirus and firewall protection, in the Northern District of California and elsewhere in the United States. FAC ¶¶ 40-42.[2]

Finjan is incorporated in Delaware. Declaration of Phil Harstein (Dkt. No. 27-1) ¶ 10. The parties dispute the location of Finjan's principal place of business. Sophos claims Finjan's headquarters is in Wilmington, Delaware or New York, New York. Reply Declaration of Summer Krause (Dkt. No. 29-2), Exs. AA-BB. Finjan has an office in New York, but asserts that in March 2014 it closed the Delaware office and established its principal place of business in Menlo Park, California. Declaration of James Hannah (Dkt. No. 27-2), Ex. A.; Harstein Decl. ¶¶ 6, 10. Finjan's president, vice president for intellectual property licensing, and vice president for legal operations work out of the Menlo Park office. Harstein Decl. ¶¶ 6-10; Hannah Decl., Exs. B-D. Additionally, Finjan states it stores and maintains files regarding daily operations at the Menlo Park office. Harstein Decl. ¶ 10. Finjan notes the move marked a return to the Northern District because from 1997-2009, Finjan was headquartered in San Jose, California. *Id.* ¶ 4.

Sophos is a Massachusetts corporation with headquarters in Burlington, Massachusetts and Oxford, United Kingdom ("UK"). Reply Declaration of Jared Sharp (Dkt. No. 29-1) ¶ 2. In January 2014, Sophos opened an office in Santa Clara, California, which serves as the base for Sophos' president and chief executive officer ("CEO"), vice president of worldwide sales, chief marketing officer, and vice president of global technical support. Hannah Decl., Exs. E-H, K-P.[3] The parties dispute whether the senior vice president of global technical services is based in Santa Clara or the UK. *Id.*, Exs. I, J; Sharp Decl. ¶ 5. The Santa Clara office houses approximately 21 of Sophos' 2100 employees. Sharp Decl. ¶¶ 2-3. Sophos sells its software and merchandise

---

of the '154, '289, '494, and '580 patents. *Id.*, Exs. B, D, X, Y.

[2] The accused products utilize Sophos Live Protection, Advanced Threat Protection, WebLENS, Behavioral Genotype, and SSL utilizing products. FAC ¶ 40.

[3] On the decision to open a Silicon Valley office, Sophos President and CEO Kris Hagerman said, "Sophos had a number of employees working from home in the Bay Area and Silicon Valley, and it just made sense to open an office." Hannah Decl. Ex. H. "Sophos is thrilled to join the many other technology leaders that call Silicon Valley home." *Id.*, Ex. E.

through channeling partners, some of which are based in the Northern District of California. Hannah Decl., Exs. S, T. Sophos does not have an office or channeling partners in Delaware. *Id.*, Ex. U. The Massachusetts office is the base for its vice president for North American sales, vice president for technology solutions, vice president of global field and channel marketing, and general counsel. Sharp Decl. ¶ 4. Development of the accused products occurs in the UK, Germany, and Vancouver, Canada. Deposition of Richard Jacobs (Dkt. No. 26-23), Ex. V.

The six patent infringement suits that Finjan has pending in the Northern District of California are assigned to four different judges. Krause Decl. (Dkt. No. 26-1), Exs. J-N.[4] Finjan previously litigated three patent infringement cases in the District of Delaware. Krause Decl., Exs. A-H. Chief Judge Gregory M. Sleet presided over each one. *Id.* Two were tried in front of a jury. *Id.* As part of Finjan's successful 2007 trial against Secure Computing Corporation, Judge Sleet construed the '780 patent, which is also asserted in this case. Krause Decl., Ex. C. Finjan's suit against Aladdin Knowledge Systems, Inc. also included the '780 patent, but the case was resolved before claim construction in 2009. *Id.*, Ex. F. In 2010, Finjan named Sophos as one of five defendants in the case *Finjan v. McAfee, Inc. Id.*, Ex. G. The *McAfee* jury found two of Finjan's patents were invalid and not infringed in December 2012, and Finjan has appealed. Krause Decl., Ex. H. None of the patents in suit here were asserted in *McAfee*. *Id.*

## LEGAL STANDARD

A court may transfer an action to another district: (1) for the convenience of the parties; (2) for the convenience of the witnesses; and (3) in the interest of justice. 28 U.S.C. § 1404(a). An action may not be transferred to a district where venue would have been improper if it originally had been filed there. *Id.*; *Van Dusen v. Barrack*, 376 U.S. 612, 613 (1964).

The Ninth Circuit requires that courts consider a variety of factors in determining whether to transfer an action. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The relevant

---

[4] In addition to this action against Sophos, Finjan sued FireEye, Inc. in July 2013, Blue Coat Systems, Inc. in August 2013, Proofpoint, Inc. in December 2013, and Websense, Inc. twice in September 2013 and again in March 2014. *Id.*

3

factors are:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Barnes & Noble v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011) (Chen, J.).  District courts have broad discretion to consider convenience and justice factors on a case-by-case basis. *Jones*, 211 F.3d at 498 (citation and internal quotation marks omitted).

The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  It is not enough for the defendant to merely show that it prefers another forum, and transfer will also not be allowed if the result is merely to shift the inconvenience from one party to another.  *Van Dusen*, 376 U.S. at 645-46.

## DISCUSSION

Sophos moves to transfer venue to the District of Delaware under section 1404(a). Neither party contests that venue for this action is proper in the Northern District or that it could not have been brought in the District of Delaware.  Therefore, this motion turns on (i) whether convenience factors favor transfer and (ii) whether interests of justice, primarily judicial economy, justify the transfer regardless of convenience.  I hold that it does not.

**I. CONVENIENCE FACTORS**

**A. Plaintiff's Choice of Forum**

Generally, a plaintiff's choice of forum is entitled to "substantial weight." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (Walker, J.).  A moving "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843.  This deference is especially great when the plaintiff has chosen to file the lawsuit in its home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).  When the plaintiff does not choose its home forum, "the presumption in the plaintiff's favor applies with less force." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citation and internal quotation marks omitted).

4

Sophos asserts that Finjan is not at home in the Northern District and so the Court should give its choice of forum little weight. Reply 1. Sophos alleges first that Finjan identified New York City as the principal location of its executive offices in recent United States Securities and Exchange Commission ("SEC") filings. Reply Krause Decl., Exs. AA, BB.[5] The SEC filings relied on by Sophos, however, were filed by Finjan Holdings, Finjan's parent company. *Id.* Moreover, the filings reflected the fiscal year ending December 31, 2013, and the quarter ending March 31, 2014, both of which respectively predate or coincide with Finjan's move to Menlo Park. *Id.* Sophos argues second that Finjan stated its headquarters was in Wilmington, Delaware in both its original Complaint and FAC. Compl. (Dkt. No. 1) 1; FAC ¶ 1. However, Finjan claims to be at home now in Menlo Park, having moved its executive management, relevant documents, and offices of legal counsel there from Delaware in March 2014. Hartstein Decl. ¶ 6; Hannah Decl., Ex. A. While Sophos argues that, at the least, Menlo Park did not constitute headquarters for Finjan when it filed this action, that fact is not determinative because Sophos is not alleging improper venue or jurisdiction. Finjan is now established and has a legitimate base of operations in this District.

Sophos' reliance on *Allegiance HealthCare Corp. v. London International Group* is off point. *See* No. 97-cv-4619-SC, 1998 WL 328624 (N.D. Cal. June 17, 1998). In *Allegiance,* the court gave the plaintiff's choice of forum "minimal consideration" where neither the plaintiff nor the defendants had any office in the original venue. *Id.*, at *1-3. In this case, both companies have offices in this District. Hannah Decl., Exs. E-H, K; Harstein Decl. ¶¶ 6-10. Sophos also cites to *In re Zimmer Holdings, Inc.*, in which the Federal Circuit granted transfer because the plaintiff's presence in its chosen forum "appear[ed] to be recent, ephemeral, and an artifact of litigation." *See* 609 F.3d 1378, 1381 (Fed. Cir. 2010). While the Menlo Park office is recently established, the other *Zimmer Holdings* elements are not evident.

Sophos makes a stronger argument in asserting that Finjan's chosen forum should be given little weight because it is not "the center of the accused activity." Mot. 12 (citing *Synopsys, Inc. v.*

---

[5] The SEC 10-Q filing also refers separately to rent obligations for the "new corporate headquarters" and the Menlo Park offices. Reply Krause Decl., Ex. BB, Note 4.

*Mentor Graphics Corp.*, No. 12-cv-5025-MMC, 2013 WL 1365946, at *5 (N.D. Cal Apr. 3, 2013) ("[T]he center of the accused activity is the district in which the defendant is alleged to have developed, tested, researched, produced, marketed, and made sales decisions concerning the accused product."); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration."); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) ("In patent infringement actions, the preferred forum is that which is the center of gravity of the accused activity.") (citation and internal quotation marks omitted). Sophos contends none of its Santa Clara employees work on product development or manufacturing, and "most" sales and marketing occur outside the Santa Clara office. Sharp Decl. ¶ 3.

While the Northern District may not be the site of all relevant activity, Sophos does not dispute that "sales decisions" and "marketing" are handled at its Santa Clara office through Sophos' president and CEO, vice president of worldwide sales, chief marketing officer, and vice president of global technical support who are based there. Hannah Decl., Exs. E-H, K-P. Sophos also does not explain why the sales of its Northern California-based channeling partners fail to create a meaningful connection to the Northern District. *See Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*, No. 12-cv-9112012, 2012 WL 2068728, at *5 (S.D. Cal. June 8, 2012) (holding that the weight in favor of transfer is diminished where the transferee forum is the center of accused activity, but the sale of accused products occurred in the plaintiff's chosen forum); *see also* Hannah Decl., Exs. S, T.

Because accused activity occurred in this District and the parties have an established presence here, this factor weighs against transfer.

### B. Convenience to Parties

Similarly, because both parties have pending litigation and offices in the Northern District (but no offices in Delaware), this factor weighs against transfer. Currently, Finjan is the plaintiff in six pending patent suits in the Northern District. Krause Decl., Exs. J-N. Sophos argues that Finjan has effectively admitted Delaware is convenient because Finjan filed two lawsuits there

1   when it was headquartered in San Jose, California. Reply 4, Krause Decl., Exs. B, E. Yet, this
2   argument fails to address the current comparative convenience. Additionally, Sophos is the
3   defendant in another case pending in this Court, facing an infringement claim regarding the same
4   accused products as are at issue in this case, as well as "poaching managers, salespeople, and
5   developers" to staff its Santa Clara office. Opp. 6-7; Hannah Decl., Exs. G, R (Complaint,
6   *Fortinet, Inc. v. Sophos, Inc.,* No. 13-cv-05831-EMC). Sophos states this litigation is "irrelevant"
7   to the question of transfer, but Finjan argues the *Fortinet* lawsuit forecloses the assertion that
8   Sophos is inconvenienced in this District. Finjan relies unconvincingly on *Allstar Marketing*
9   *Group, LLC v. Your Store Online*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009), which found the
10  defendants' involvement in separate litigation in the original district undermined their assertion
11  they would be greatly inconvenienced there, but held that convenience to parties overall favored
12  transfer because neither was at home in the original district. In this case, Finjan's pending
13  litigation supports its convenience argument. Sophos' pending litigation in this District is a
14  neutral factor.

15  Sophos also asserts that its office in the Northern District does not have a "meaningful
16  connection" to this action. But it fails to show "particular circumstances" that clearly favor
17  Delaware over this District. *See Futures Trading Comm'n*, 611 F.2d at 279 (the party seeking
18  transfer carries the burden of showing that the original forum is "inappropriate"). The Sophos
19  Santa Clara office and the senior management who work there establish far greater contact with
20  this District than with Delaware, where Sophos has no connection except past litigation. Sophos
21  does not connect the infringing activity to Delaware, and argues only that Delaware is relatively
22  closer to Massachusetts than California. *See* Jacobs Dep., Ex. V. Even if it would be somewhat
23  more convenient for Massachusetts employees to reach Delaware, a transfer of venue is not
24  justified where it would merely shift the inconvenience from one party to another. *Van Dusen*,
25  376 U.S. at 645-46.

26  Because both parties have a significant presence in this District, in terms of pending
27  litigation and offices related to the accused activity, and these factors are totally absent in
28  Delaware, the convenience of the parties weighs against transfer.

7

### C. Convenience to Witnesses

In balancing this factor, courts give greater consideration to the convenience of non-party witnesses over party witnesses. *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005). This factor weighs against transfer because no witnesses are in Delaware, non-party witnesses are slightly closer to this District, and some relevant party witnesses are located in this District.

#### 1. Non-party witnesses

While all identified non-party witnesses would have to travel to either Delaware or this District, the Northern District is somewhat more convenient. None of the nine inventors of the asserted patents live in either California or Delaware. Hannah Decl. ¶ 7. One lives in Texas, approximately equidistant between the original and proposed venue. *Id.* At least one lives in Washington State, closer to California. *Id.* The parties contest whether a second inventor lives in Washington state or abroad. Mot. 6; Opp. 5. The others live abroad, and the inconvenience of foreign travel to Delaware or California is neutral. *See In re Genentech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009); *Digitech Image Techs., LLC v. Leica Camera AG*, No. 12-cv-01677, 2012 WL 6062749, at *2 (C.D. Cal. Dec. 5, 2012).

#### 2. Party witnesses

Neither party has identified any relevant witnesses in Delaware. Finjan asserts it will rely on testimony from a number of Northern California-based managers with "relevant knowledge," including at least four from Sophos senior management and three from Finjan. Harstein Decl. ¶¶ 2, 8, 9.[6] Sophos responds that Finjan's assertion is not entitled to weight because Finjan does not explain which employees it would call as trial witnesses, only those it would depose. Because witnesses can be deposed where they are located, but trial witnesses must come to the trial forum, only designations of trial witnesses matter in the consideration of convenience. Sophos also contends that none of its employees whom Finjan deposed in the *McAfee* action in Delaware are

---

[6] From Sophos, Finjan plans to depose the vice president of worldwide sales, vice president of global technical support, chief marketing officer, and senior vice president of global technical services. Opp. 12. The parties contest whether the senior vice president of global technical services is located in California, but the others work in Santa Clara. Reply 3.

based in California. Reply 5. Finjan asserts that the witnesses in this case are different because both parties have acquired "almost entirely new" management teams since the *McAfee* suit. Opp. 18. Also, none of the patents in suite here were raised in *McAfee*.

Sophos generally asserts that its "key" witnesses, the employees who design and develop the accused products, are located primarily in the UK and Massachusetts. Reply 5. As Finjan argues, however, Sophos did not submit affidavits or declarations specifically identifying who these key witnesses are and what their testimony will include, which undermines Sophos' position. *InCorp Servs. Inc. v. Incsmart.Biz Inc.*, No. 11–cv–4660-EJD, 2012 WL 3685994, at *14 (N.D. Cal. Aug. 24, 2012) (holding that the defendant must indicate "who the key witnesses will be and what their testimony will generally include" in order to support a motion for transfer); *accord Florens Containers v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002) (Jenkins, J.). Further, the inconvenience for Sophos employees is of little weight because the foreign employees will have to travel a great distance regardless of the venue, and Sophos can compel its own employees to testify. *See Skyriver Tech. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc.*, No. 10-cv-03305-JSW, 2010 WL 4366127 (N.D. Cal. Oct. 28, 2010) (holding the inconvenience to litigants' employee witnesses has little significance because "litigants are able to compel their employees to testify at trial, regardless of forum."); *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) (Peckham, J.).

In sum, Finjan has demonstrated that some of its own employees in this District are important witnesses and that it believes a few California-based Sophos witnesses will also be relevant to this action. In contrast, Sophos has not met its burden of showing that Delaware is significantly more convenient than California for its Massachusetts witnesses. This factor, therefore, weighs against transfer.

### D. Ease of Access to Evidence

The ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district. *See, e.g., Cisco Systems, Inc. v. TiVo Inc.*, No. 12-cv-02766-RS, 2012 WL 3279532, at *7 (N.D. Cal Aug. 10, 2012).

Although I agree with Sophos that little weight should be placed on the location of

1    documents, I do not agree with Sophos' argument that the recent arrival of Finjan's relevant
2    documents in the Northern District is an attempt to "manipulate venue." *See* Reply 6. The
3    situation here is unlike *In re Hoffmann-LaRoche*, relied on by Sophos, where documents were
4    transferred ahead of litigation to a venue where parties had no other meaningful connection. *See*
5    Harstein Decl. ¶ 10; *but see In re Hoffmann-LaRoche,* 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).
6    In contrast, Finjan's documents accompanied the move of an entire office.

### II. INTERESTS OF JUSTICE

#### A. Familiarity of either forum with applicable law

This factor is neutral because the districts are comparably familiar with the applicable federal patent law.

#### B. Feasibility of Consolidation

This factor is neutral because there are no active cases in Delaware that this case could be consolidated with, and Finjan has successfully resisted combining its six actions in the Northern District, which are proceeding on different schedules. Mot. 9-10.

#### C. Local Interest

Local interest weighs against transfer because the accused activity is not localized in Delaware, and the accused products are allegedly sold in this District. *See Peregrine Semiconductor*, WL 2068728, at *10; Hannah Decl., Exs. E-H, K-P. Sophos' argument that local interest is greater in Delaware is premised primarily on Finjan and Sophos not having a meaningful connection to the Northern District, which I have rejected. *See* Reply 6. Moreover, the presence of Finjan and Sophos' offices in the Northern District indicates that both parties have availed themselves of California law. This creates more local interest than Finjan's Delaware incorporation alone.

#### D. Judicial Economy/Relative Time to Trial

The inquiry for this factor turns on whether "efficient and expeditious administration of justice would be furthered" by transfer. *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977).

Sophos relies on Federal Circuit cases finding that judicial economy may be "determinative" where the subject matter is highly technical and the transferee court is familiar

10

with the issues. *See, e.g., Regents of the Univ. of Cal. v. Eli Lilly Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). Despite Judge Sleet's experience with Finjan's technology in its three District of Delaware cases, this argument is not persuasive for several reasons. First, in *Regents*, the convenience factors were neutral, unlike in this case. *See id.* Moreover, the Ninth Circuit authority relied on by the Federal Circuit in *Regents* weighed the judicial economy of "undoubted[] . . . delay" against only "possible inconvenience." *See id.*; *Allen v. Scribner*, 812 F.2d 426, 436-37 (9th Cir. 1987). Sophos similarly points to *Eli Lilly & Co. v. Genentech, Inc.*, but in that case the court also found that transfer promised greater efficiency. *See* No. 13-cv-0919-YGR, 2013 WL 4396718, at *6 (N.D. Cal. Aug. 13, 2013). *Allen* and *Eli Lilly* are unlike the current action, in which there is no indication the case will be more delayed in the Northern District by court congestion or other factors. *See id.*; *Allen*, 812 F.2d at 436-37. In the year ending September 31, 2013, the median time for case dispositions in both Delaware and the Northern District was 7.6 months. Krause Decl., Ex. U.[7]

Also, inconsistency and duplication are not concerns in this case because there is no substantial patent overlap with a prior case. At oral argument, counsel for Sophos urged the similarities between this case and *Eli Lilly*. But the cases are distinguishable. There is no indication that Chief Judge Sleet is deeply invested in these patents, unlike Judge Pfaelzer in *Eli Lilly*, who described herself as having become a "student" of the patents at issue through ten years of relevant litigation. *See* 2013 WL 4396718, at *6. Judge Pfaelzer had significant experience in the transferee court with two of the three patents in suit, leading the *Eli Lilly* court to determine that Judge Pfaelzer would not have to "relearn" or become familiar with "materials not previously before it." *See id.* In this case, Judge Sleet has presided over litigation dealing with one of the eight patents in suit, and he apparently construed the '780 patent at least seven years ago. *See* Krause Decl., Ex. C, E. Sophos products were contested in just one of the three Finjan cases

---

[7] Finjan argues that Delaware receives more patent cases, which counsels against transfer because of the complexity of those cases presumably causes delay. That argument is not persuasive because the appropriate inquiry is how quickly this case will be resolved and the median resolution time for all cases. *See* Opp. 15-16. Similarly, Sophos' counterpoint that more cases are filed in the Northern District does not help its argument because Sophos fails to note that there are more judges sitting in the Northern District to handle the case load.

11

Case 3:14-cv-01197-WHO   Document 38   Filed 06/20/14   Page 12 of 12

1  before him. *See id.*, Ex. G.  Judge Sleet would have to relearn one patent and learn for the first
2  time about the seven other patents in suit here, which was not the case in *Eli Lilly*.  *See* 2013 WL
3  4396718, at *6.
4         This case is further distinguished by convenience factors in favor of transfer that were
5  present in *Eli Lilly* and are not found in this case.  For example, the defendant City of Hope was
6  based in the proposed venue of the Central District, while in this case neither party is based in
7  Delaware.  *See id.*, at *2.  Similarly, the plaintiff's displacement as a result of the *Eli Lilly* decision
8  from the Northern District to the Central District of California was substantially less inconvenient
9  than the cross-country change of venue proposed here.  *Id.*
10         Finally, as Finjan notes, Sophos generally relies on case law in which both sides had
11  pending litigation in the transferee court.  *See Bristol-Myers Squibb Co. v. Genentech*, No. 13-cv-
12  2045-SI, 2013 WL 3829599 (N.D. Cal. June 23, 2013); *Alere Med. Inc. v. Health Hero Network,*
13  *Inc.*, No. 07-cv-05054-CRB, 2007 WL 4351019 (N.D. Cal. Dec. 12, 2007); *CSR Tech., Inc. v.*
14  *Bandspeed, Inc.*, No. 11-cv-1948, 2012 WL 1150863 (D. Ariz. Apr. 5, 2012).  These cases are
15  different from the present claim because all of Finjan's actions in Delaware are closed (with one
16  on appeal), which removes the risk of duplication or conflicting decisions.  *See id.*, Krause Decl.,
17  Exs. C, F, H.
18         In sum, the interests of justice do not tip the scale in favor of transfer.

## CONCLUSION

20         For the reasons set forth above, the relevant factors weigh in against transfer. Defendant's
21  motion to transfer venue is DENIED.
22         **IT IS SO ORDERED**.
23  Dated: June 20, 2014

WILLIAM H. ORRICK
United States District Judge

12