UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FINJAN, INC.,

               Plaintiff,

    v.

SOPHOS, INC.,

               Defendant.

Case No.  14-cv-01197-WHO

**PARTIAL ORDER ON SOPHOS'S *DAUBERT* MOTIONS AND MOTIONS *IN LIMINE* GRANTING IN PART SOPHOS'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF LAYNE-FARRAR**

Re: Dkt. No. 217

**INTRODUCTION**

This is a patent infringement action involving technologies for computer and network security.  Plaintiff Finjan, Inc. ("Finjan") accuses defendant Sophos, Inc. ("Sophos") of infringing 14 different claims from six different patents.[1]  Trial is set for September 6, 2016.

I previously issued an Order on Matters Heard on May 11, 2016.  The parties have since

---

[1] The 14 asserted claims of the six asserted patents are:

    (1) claim 1 of U.S. Patent No. 8,141,154 ("the '154 patent");

    (2) claims 1, 10, 14, and 18 of U.S. Patent No. 8,677,494 ("the '494 patent");

    (3) claim 1 of U.S. Patent No. 8,566,580 ("the '580 patent");

    (4) claims 9 and 18 of U.S. Patent No. 6,804,780 ("the '780 patent");

    (5) claims 1, 7, 16, and 43 of U.S. Patent No. 6,154,844 ("the '844 patent"); and

    (6) claims 18 and 22 of U.S. Patent No. 7,613,926 ("the '926 patent").

Joint Pretrial Statement at 2 (Dkt. No. 218).  Finjan also previously accused Sophos of infringing claim 22 of U.S. Patent No. 7,757,289 and claim 12 of U.S. Patent No. 7,613,918, but I granted Sophos's motion for summary judgment of noninfringement on those claims.  *See id.* at 1 n.1.

United States District Court
Northern District of California

1    filed *Daubert* motions and a number of motions *in limine* in preparation for trial.  I heard

2    argument from the parties at the pretrial conference on August 8, 2016 and now rule on Sophos's

3    *Daubert* motion to exclude testimony of Finjan's damages expert Dr. Layne-Farrar.

4        Sophos moves to exclude Layne-Farrar's testimony on five bases: (1) Layne-Farrar has no

5    foundation for her assertion that each feature of each product is equally valuable, (2) Layne-

6    Farrar's apportionment methodology improperly inflates her royalty base, (3) Layne-Farrar's

7    opinions on future damages are unreliable, (4) Layne-Farrar improperly relies on the *Secure*

8    *Computing* royalty rates, and (5) Layne-Farrar includes in her calculations revenues for non-

9    infringing products.

10       As discussed in detail below, I now GRANT Sophos's motion to exclude Layne-Farrar's

11   testimony on the basis that her apportionment methodology is unreliable as it improperly inflates

12   the apportionment base; I GRANT Sophos's motion to preclude Layne-Farrar's testimony on

13   future damages with regard to the '154 and '580 patents; I GRANT Sophos's motion to preclude

14   Layne-Farrar from including incorrect SAV Engine numbers in her SAV Engine royalty

15   calculation; and I GRANT Sophos's motion to preclude Layne-Farrar from including Sophos Red

16   and Access Point figures in her billings royalty calculation.  I DENY Sophos's motion in all other

17   respects.  Finjan is granted leave to amend the deficiencies in Layne-Farrar's report and may

18   submit an amended report by August 24, 2016.

19                                      **LEGAL STANDARD**

20       Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion

21   or otherwise" where:

22           (a) the expert's scientific, technical, or other specialized knowledge
             will help the trier of fact to understand the evidence or to determine
23           a fact in issue;

24           (b) the testimony is based on sufficient facts or data;

25           (c) the testimony is the product of reliable principles and methods;
             and
26

27           (d) the expert has reliably applied the principles and methods to the
             facts of the case.

28           Fed. R. Evid. 702.

                                              2

Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (internal quotation marks omitted).

Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* These factors are "helpful, not definitive," and a court has discretion to decide how to test reliability "based on the particular circumstances of the particular case." *Id.* (internal quotation marks and footnotes omitted). "When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).

The inquiry into the admissibility of expert testimony is "a flexible one" where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010). The burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the admissibility requirements are satisfied. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *see also* Fed. R. Evid. 702 advisory committee's note.

## DISCUSSION

Sophos moves to exclude Layne-Farrar's testimony on five bases: (1) Layne-Farrar has no foundation for her assertion that each feature of each product is equally valuable, (2) Layne-

United States District Court
Northern District of California

Farrar's apportionment methodology improperly inflates her royalty base, (3) Layne-Farrar's

opinions on future damages are unreliable, (4) Layne-Farrar improperly relies on the *Secure*

*Computing* royalty rates, and (5) Layne-Farrar includes in her calculations revenues for non-

infringing products.  I will address each of these arguments in turn.

**A.  Layne-Farrar's opinion that each feature of each product is equally valuable**

Sophos moves to exclude Layne-Farrar's testimony on the basis that she has no reliable

foundation for her assumption that each feature of a product is equally valuable.  Sophos Mot. 3.

[Dkt. No. 217].  Finjan argues that the basis for Layne-Farrar's assumption is the opinion of Dr.

Medvidovic who reviewed, among other evidence, Sophos's "marketing and architectural

documents, documents for potential investors, testimony of Sophos engineers, and the expert

opinions of Finjan's infringement experts" to reach his opinion that the features in Sophos's

products are equally valuable.  Finjan Oppo. 3. [Dkt. No. 226].  Finjan also argues that Sophos

should be precluded from contesting Layne-Farrar's apportionment method as Sophos's expert Dr.

Napper used the same method in calculating apportionment revenues.  *Id.* at 2.

Courts exclude apportionment methodologies where experts make no attempt to

investigate whether product functions should be assigned equal value.  *See e.g.*, *Good Tech. Corp.*

*V. Mobileiron, Inc.*, No. 5:12-cv-5826-PSG, 2015 WL 4090431, *5 (N.D. Cal. July 5, 2015)

(finding the assumption to assign equal value to different criteria insufficient where the expert did

"no investigation into whether any of the criteria is more important than others").  However, here

Layne-Farrar relied on the opinions of Medvidovic, who conducted an investigation into this issue

that he lays out in his report.  Finjan Oppo. 2-4.  Layne-Farrar is entitled to rely on Medvidovic's

opinion.  *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 1737951, at

*4 (N.D. Cal. Apr. 8, 2015) (It is "reasonable to expect that experts will rely on the opinion of

experts in other fields as background material for arriving at an opinion.").  There is a factual

foundation for Layne-Farrar's assumption to assign equal value to each product feature, and Finjan

has outlined the precise evidence she relied on.  Finjan Oppo. 2-4.  Sophos is free to cross-

examine Medvidovic and Layne-Farrar on this issue.

Finjan's second rebuttal, that Sophos cannot contest the use of Layne-Farrar's

United States District Court
Northern District of California

1   apportionment method because Napper used the same method, appears to confuse Napper's

2   testimony.  In support of this defense, Finjan cites to a section of Napper's report in which he

3   critiques Layne-Farrar's methods rather than outlining his own calculations.  Finjan Oppo. 2.

4   (citing Napper Rpt. at 100-104, a section titled "The Layne-Farrar Report Apportionment

5   Methodology is Flawed and Unsupported").  Nevertheless, as there is a factual foundation for

6   Layne-Farrar's decision to assign equal value to product features, Sophos's motion to exclude

7   Layne-Farrar's testimony on this basis is DENIED.

8       **B.  Layne-Farrar's apportionment methodology**

9       Sophos moves to exclude Layne-Farrar's testimony on the grounds that she improperly

10   inflated the royalty base by double or triple counting revenue attributable to certain features of the

11   accused products.  Sophos Mot. 6.  Sophos outlines Layne-Farrar's method with an example: "She

12   opines that because the '844 patent allegedly covers both threat engine and live protection, it is

13   appropriate to apportion the royalty base by 28.6% (or 2/7) as to the '844 patent.  Although the

14   '494 patent allegedly covers those same features, Dr. Layne-Farrar still finds it appropriate to

15   apportion the royalty base by 28.6% as to the '494 patent."  *Id.*  In this way, Layne-Farrar counts

16   the revenue attributable to certain features multiple times in calculating her royalty base such that

17   her total apportionment calculation uses a royalty base that is over 100 percent of the total value of

18   several of the accused products.  *Id.* at 6-7.

19       Finjan argues that Layne-Farrar's calculations are not unreliable because she has properly

20   calculated the damages on a per-patent basis so that, if any of the patents are found invalid, the

21   jury will still be able to calculate damages specific to each patent.  Finjan Oppo. 6.  Finjan also

22   argues that Sophos's critique of Layne-Farrar's method is misleading because it excludes the fact

23   that Layne-Farrar applied a royalty rate to her royalty base to calculate an overall reasonable

24   royalty well below the total revenues for the products.  *Id.* at 6-7.  Finjan contends that there is no

25   one method to calculate a reasonable royalty and given the "highly complex nature of the

26   technology" Layne-Farrar's calculations are reasonable.  *Id.* at 6.

27       While Layne-Farrar's ultimate reasonable royalty calculation is less than the total revenues

28   for the products, this royalty may still be unreasonably inflated if she calculated it using an

United States District Court
Northern District of California

5

1    inflated royalty base.  Layne-Farrar's method of counting the revenue attributable to certain

2    features multiple times, when those features are covered by multiple patents, is not a reasonable

3    method of counting the value added by the patented features.  If only 6/12 total features of a

4    particular product are infringed by any of the accused patents, and we assume that each feature has

5    an equal value, then the total value added of all of the combined patents cannot exceed 50 percent

6    of the total product value.  However, several of Layne-Farrar's value-add calculations assume that

7    the combined value added of the alleged patents would exceed the total product value.  This

8    calculation results in an inflated damage calculation that is likely to mislead the jury.

9        At the hearing on August 8, 2016 Finjan's counsel argued that Sophos's challenge of this

10   portion of Layne-Farrar's report amounts to a claim that "Finjan's only entitled to recover

11   damages as if it was one patent in suit because we have overlapping technologies at issue."  Let's

12   be clear.  If Finjan's patented technologies are truly overlapping then it can in fact only recover

13   damages as if one patent is in suit as "no patent can issue for an invention actually covered by a

14   former patent."  *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 14 S. Ct. 310, 38 L. Ed. 121 (1894).  If

15   Finjan's patents cover identical technologies, then its later patents cannot be valid as a matter of

16   law.  *Id.*

17       Of course, Finjan's patents may cover related and intermingled technologies, not identical

18   ones.  For example, Layne-Farrar opines that the threat engine feature of the SAV Engine accounts

19   for 1/7 the value of the product.  Layne-Farrar Rpt. at 101-102 [Dkt. No. 215-5].  She further

20   opines that the '844 patent and '494 patent both cover the threat engine feature.  *Id.*  If we assume

21   that this is true, and if we also assume that both patents are valid, as Layne-Farrar does, then as a

22   matter of law these patents must cover different technologies that together contribute to the total

23   value of the threat engine feature.

24       I understand that these are complicated, intermingled technologies and that it is difficult to

25   separate them, but it is not necessary for us to do so to resolve this issue.  Under Layne-Farrar's

26   methodology, the total value of the threat engine feature does not change.  In this example there

27   are several logical possibilities: the '844 patent alone may contribute the full value of the threat

28   engine feature, the '494 patent alone may contribute the full value of the threat engine feature, or

6

1    some combination of technologies covered by both the '844 and '494 patents may together

2    contribute the full value of the threat engine feature.  However, what is not possible, as a matter of

3    law and logic, is that the '844 and '494 patents' combined add more value to the threat engine

4    feature than its total value.  This is what Layne-Farrar's report assumes by apportioning the value

5    of the threat engine feature to both the '844 and '494 patents.  This method assumes that both

6    patents add the full value of that feature to the SAV Engine.  As discussed, this is not possible

7    under patent law; therefore this apportionment calculation is not a reliable methodology for

8    calculating a reasonable royalty.

9         This flaw may be cured by amending Layne-Farrar's total damages calculation to reflect a

10   royalty base that does not exceed the total possible value added of the combined asserted patents.

11   Finjan may still show damages on a per-patent basis.  Layne-Farrar could create a flexible damage

12   calculation that reflects the total possible royalty attributable to each patent but then accounts for

13   overlap in the patents' covered features to prevent double counting.

14        I therefore GRANT Sophos's motion to exclude this testimony and give Finjan leave to

15   amend the Layne-Farrar report to address this issue.

16   ### C.   Layne-Farrar's opinions on future damages

17        Sophos moves to exclude Layne-Farrar's opinions as to future damages on the basis that

18   her assumption that Sophos's future sales will be constant is not supported by evidence.  Sophos

19   Mot. 7.  Sophos notes that it is only appropriate to consider future estimated usage when "proof is

20   presented to support the expectation."  *Lucent Techs. v. Gateway, Inc.,* 580 F.3d 1301, 1333 (Fed.

21   Cir. 2009).  Finjan rebuts that Layne-Farrar relied on evidence of Sophos's "steady growth in

22   billings and gross margins" to reach the conservative estimate that Sophos's future sales would

23   remain constant.  Finjan Oppo. 7.  Sophos argues that this limited evidence is not sufficient,

24   especially since Layne-Farrar's future damage estimates extend through the life of the patents that

25   in some cases are more than a decade into the future.  Sophos Mot. 8.  *Bianco v. Globus Med.,*

26   *Inc.*, 53 F. Supp. 3d 929, 942 n.3 (E.D. Tex. 2014) (testimony as to future damages was excluded

27   prior to trial where expert's calculation involved "estimating future sales of the accused products

28   and extending that projection over a period of 15 years.").

United States District Court
Northern District of California

1    Sophos's argument on this point is misleading as four of the six remaining patents at issue

2    in this litigation expire before the end of 2017.  Layne-Farrar's estimate of steady sales through

3    the end of 2017, less than a year and a half, based on current steady growth, is reasonable and

4    sufficiently supported by evidence.  The fifth patent, '154, expires in December 2025 and the sixth

5    patent, '580 expires in 2032.  Layne-Farrar's estimate of steady sales through the end of 2025 and

6    2032, based only on current growth, is too speculative to assist the jury in assessing a reasonable

7    future damage amount.  *Daubert*, 509 U.S. at 597 (an expert's testimony must have a "reliable

8    foundation").  I therefore GRANT Sophos's motion to exclude Layne-Farrar's future damage

9    testimony with regard to the '154 and '580 patents.  I DENY the motion with regards to the '494,

10   '780, '926, and '844 patents.

11   **D.  Layne-Farrar's use of the *Secure Computing* royalty rates**

12   Sophos moves to preclude Layne-Farrar from relying on the *Secure Computing* royalty

13   rates of 8-16 percent in calculating her own royalty rate.  Sophos Mot. 8.  Sophos argues that these

14   royalty rates were calculated using the now discredited "rule-of-thumb" method and are therefore

15   unreliable.  *Id.* at 9.  Finjan rebuts that Layne-Farrar does not rely exclusively on the *Secure*

16   *Computing* royalty rates as her calculations consider many different factors.  Finjan Oppo. 9.  It

17   further rebuts that the *Secure Computing* rates were not calculated using a "rule-of-thumb" method

18   asserting that while the experts in that case used the "rule-of-thumb" method and suggested

19   royalty rates ranging from 25-33 percent, the jury clearly did not rely on this method as it adopted

20   a 8-16 percent rate.  *Id.*  I am convinced that Layne-Farrar did not rely exclusively on the *Secure*

21   *Computing* rates.  Further, as the *Secure Computing* jury reached a royalty rate significantly

22   different that the "rule-of-thumb" rates the experts suggested in that case, it appears that the

23   *Secure Computing* rates were not calculated using that method.

24   Sophos further argues that Layne-Farrar improperly applies her royalty rates to individual

25   patents rather than the entire patent portfolio, as the jury did in *Secure Computing* and fails to

26   explain why a royalty rate applicable to a patent portfolio would be applicable to individual

27   patents.  Sophos Mot. 9-10.  Since I have concluded that Layne-Farrar's royalty rates are not

28   exclusively based on the *Secure Computing* rates, it is not apparent that such an explanation is

1    necessary.  While it may be the case that a patent portfolio and an individual patent would have

2    different royalty rates, it is not logically or legally impossible for them to be similar or the same.

3    Layne-Farrar has explained how and why she adopted the royalty rates she did.  Sophos's

4    contention that Layne-Farrar did not adequately explain why her royalty rate should be applied to

5    each individual patent can be addressed on cross-examination.  I therefore DENY Sophos's

6    motion to preclude Layne-Farrar from using the *Secure Computing* royalty rates as part of her

7    analysis.

8    **E.  Layne-Farrar's inclusion of revenues for non-infringing products**

9    Sophos moves to preclude Layne-Farrar from including revenue for non-infringing

10   products in her damage calculation,.  Sophos Mot. 10.  Sophos identifies two flaws: (1) Layne-

11   Farrar calculates royalties using the number of SAV Engines in the EndPoint products, but the

12   EndPoint products only relate to two of the accused patents resulting in an inflated SAV Engine

13   number, and (2) Layne-Farrar includes unaccused products within the Sophos UTM family in her

14   royalty base.  *Id.*  Sophos concludes that as a result of these miscalculations, Layne-Farrar

15   overestimates total damages by tens of millions of dollars.  *Id.* at 10-11.  Finjan rebuts these two

16   points noting that (1) Layne-Farrar relied on user data Sophos supplied in calculating royalties for

17   the SAV Engines and Sophos failed to disclose that this data applied only to the EndPoint

18   products, and (2) Layne-Farrar relied on Sophos's misrepresentation that all of the products

19   included in the billings were for accused products.  Finjan Oppo 10.  Finjan argues that since

20   Sophos did not provide sufficient information regarding the SAV Engines and misrepresented the

21   billing data during discovery, it should not be permitted to exclude Layne-Farrar's testimony now.

22   *Id.* at 11.

23   Regarding the SAV Engine issue, Finjan first argues that because Sophos did not state that

24   the user numbers it provided were for SAV Engines used in EndPoint products, it should not be

25   allowed to state otherwise now under Federal Rule of Civil Procedure 37(c).  "If a party fails to

26   provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that

27   information . . . at a trial . . ." *Id.*  At the hearing on August 8, 2016 Sophos argued that it had

28   provided an explanation as to the SAV Engines in an interrogatory response.  Finjan responded

9

that this interrogatory response did not sufficiently explain that the SAV Engine numbers applied only to the EndPoint products. Neither party has submitted this interrogatory response to the court. On these facts, Finjan has not adequately shown that Sophos failed to comply with Rule 26. Further, Finjan notably does not dispute that Layne-Farrar used the incorrect number of SAV Engines in her calculations. If Layne-Farrar's SAV Engine royalty calculations are admittedly based on incorrect information, I cannot justify allowing Finjan to present these calculations to the jury, even if Sophos's interrogatory response was not entirely clear.

Second, Finjan asserts that even though Layne-Farrar used the incorrect SAV Engine numbers, her calculations are nevertheless reliable because the SAV Engine uses SophosLabs, which means that every user of SAV Engine is also a user of SophosLabs. Finjan Oppo. 10. This rebuttal does not seem to address Sophos's critique, which is that Layne-Farrar's calculations are incorrect because she overestimated the total number of SAV Engines. Sophos Mot. 10. If the problem with Layne-Farrar's calculation is the number of SAV Engines she included, then her calculations would be similarly unreliable with regards to SophosLabs. As Finjan has not offered a clear explanation as to why Layne-Farrar's royalties for the SAV Engines are reliable, despite Sophos's evidence that they are inaccurate, I GRANT Sophos's motion with regards to Layne-Farrar's use of incorrect SAV Engine numbers in her SAV Engine royalties calculation. Finjan may submit an amended report from Layne-Farrar that uses the correct number of SAV Engines.

With regards to Sophos's critique of Layne-Farrar's billings methodology, Finjan argues that Layne-Farrar relied on Sophos's misrepresentation that all of the products included in the billings data were accused products. Finjan Oppo. 10. Finjan cites to *Coloplast A/S v. Generic Medical Devices Inc.*, for the proposition that failure to disclose information during discovery precludes its use during trial as "[i]t would seem unfair and unjustified to represent one position during discovery, then advantageously switch positions after discovery has closed." No. C10-227, 2011 WL 6330064, at *5 (W.D. Wash. Dec. 19, 2011). Finjan overstates *Coloplast* as the language it quotes is dicta, and because the court's reference related only to a theoretical failure to disclose information. *Id.* While Finjan does point to evidence that Sophos affirmatively misrepresented the billings data, this misrepresentation cannot justify presenting false information

United States District Court
Northern District of California

1    to the jury if it is clear that Layne-Farrar's calculations are incorrect.  Finjan Mot. Ex-11-12.

2        At the hearing, Sophos and Finjan disputed whether it had been definitively established

3    that the revenues Sophos claims should be excluded from Layne-Farrar's billings calculations

4    relate to non-infringing products.  The parties' briefing and discussion at the hearing reflect that

5    there is a distinction between the Sophos Red and Access Point figures and the convoyed sales

6    figures.

7        There is no plausible dispute that the Sophos Red and Access Point figures relate to non-

8    infringing products.  Layne-Farrar removed some, but not all, of the Sophos Red and Access Point

9    figures from her calculations, indicating that she believed these figures relate to non-infringing

10   products and should be excluded.  Her failure to remove all instances of these products from the

11   data appears to be a simple technical mistake.  Sophos Mot. 10.   While it is concerning that

12   Sophos may have misrepresented some of its data, and this certainly excuses some of Layne-

13   Farrar's miscalculations, it does not make them reliable or justify presenting what Finjan's own

14   expert implicitly admits are incorrect figures to the jury.  I therefore GRANT Sophos's motion

15   with regards to the Sophos Red and Access Point figures.  As there is no clear dispute that the

16   Sophos Red and Access Point figures were incorrectly included in Layne-Farrar's calculations, I

17   cannot justify allowing Finjan to present these figures to the jury.

18       With regards to the convoyed sales figures, counsel for Sophos acknowledged at the

19   hearing that "we have a dispute about if certain support should be included or not."  Since this

20   appears to be a genuine issue in dispute between the parties' experts, it is not clear that Layne-

21   Farrar used incorrect convoyed sales figures in her calculations.  A dispute between experts is not

22   a basis for exclusion and is better addressed through contrary evidence or cross-examination.

23   *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012).  I

24   therefore DENY Sophos's motion to exclude any of the convoyed sales figures or remaining

25   figures still in dispute.

26                                **CONCLUSION**

27       As discussed above, I GRANT Sophos's motion to exclude Layne-Farrar's testimony

28   regarding her apportionment methodology because it improperly inflates the apportionment base

United States District Court
Northern District of California

11

and is therefore unreliable; I GRANT Sophos's motion to preclude Layne-Farrar's testimony on future damages with regard to the '154 and '580 patents she has insufficient evidence of future sales through 2025 and 2032; I GRANT Sophos's motion to preclude Layne-Farrar from using incorrect SAV Engine numbers in her SAV Engine royalty calculation as inaccurate calculations cannot reasonably assist the jury; and I GRANT Sophos's motion to preclude Layne-Farrar from including Sophos Red and Access Point figures in her billings royalty calculation as including revenues for admittedly non-infringing products cannot reasonably assist the jury.  I DENY Sophos's motion in all other respects.

Finjan is granted leave to amend the deficiencies in Layne-Farrar's report and may submit an amended report by August 24, 2016.  It shall make Layne-Farrar available for a deposition of no more than two hours on September 1, 2016, or on such other date as agreed by the parties.

**IT IS SO ORDERED**.

Dated: August 15, 2016

WILLIAM H. ORRICK
United States District Judge