SEAN CUNNINGHAM (Bar No. 174931)
sean.cunningham@dlapiper.com
KATHRYN RILEY GRASSO (Bar No. 211187)
kathryn.riley@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  (619) 699-2700
Fax:  (619) 699-2701

SUMMER K. TORREZ (Bar No.264858)
summer.torrez@dlapiper.com
KRISTA CELENTANO (Bar No. 279526)
krista.celentano@dlapiper.com
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2215
Tel:  650.833.2000
Fax:  650.833.2001

TODD PATTERSON (*pro hac vice*)
todd.patterson@dlapiper.com
**DLA PIPER LLP (US)**
401 Congress Avenue, Ste. 2500
Austin, TX 78701-3799
Tel:  512.457.7000
Fax:  512.457.7001

ANDREW N. STEIN (*pro hac vice*)
andrew.stein@dlapiper.com
**DLA PIPER LLP (US)**
500 Eighth Street NW
Washington, D.C.  20001
Tel: 202.799.4000
Fax: 202.799.5000

Attorneys for Defendant
SOPHOS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>SOPHOS INC.,<br><br>                    Defendant. | CASE NO.  3:14-cv-01197-WHO<br><br>**SOPHOS'S STATEMENT AND DECLARATION REGARDING ACCESS TO PERFORCE SYSTEM AT TRIAL**<br><br>Judge:  William H. Orrick |

In response to the Court's August 8, 2016 oral Order, Sophos submits the attached declaration of Ross McKerchar to address the difficulties and risks to Sophos if it is required to allow live access to its Perforce source code repository at trial.  The Court will recall that Perforce is Sophos's highly confidential, highly secure server system for storing and maintaining all of Sophos's released and unreleased (*i.e.*, in development) source code for its products.  Sophos emphasizes that Finjan does not need live access to Perforce in the courtroom, because the Court already has ruled that "Drs. Cole and Mitzenmacher may not rely on the [Exhibit 3 source code]

tables to articulate new infringement theories not disclosed in their reports.  They may, however, rely on those portions of the tables that are <u>specifically identified</u> in their reports."  Dkt. No. 205 at 28 (emphasis added).  The Court defined what it meant by "specifically identified" in footnote 8 to its May 24 Order.  Based on that Order, Finjan's experts may refer to only 32 source code files cited in their reports that meet the Court's definition of "specifically identified."  (For the Court's convenience, those source code files and the corresponding citations to Finjan's expert reports are set forth on the next page.)

Because Finjan's experts can only refer to 32 source code files at trial, Finjan is seeking access to Sophos's highly secure Perforce system to try to do an end-run around the Court's May 24 Order.  Finjan wants its experts to have access to portions of the Perforce source code that were already struck by the Court.  Thus, requiring Sophos to provide live access to Perforce is unnecessary and unwarranted.

Dated:  August 15, 2016

**DLA PIPER LLP (US)**

By  /s/Sean Cunningham
SEAN CUNNINGHAM
KATHRYN RILEY GRASSO
TODD PATTERSON
ANDREW N. STEIN
SUMMER K. TORREZ

Attorneys for Defendant SOPHOS INC.

DLA Piper LLP (US)
San Diego
WEST\270452659.1

-2-
SOPHOS'S STMT AND DECL RE ACCESS TO PERFORCE SYSTEM AT TRIAL
CASE NO. 13-CV-01197-WHO

| | Source Code Citation | Report Citations |
|---|---|---|
| 1 | //dev/engine/trunk/modules/engine/include/shared/bbschema.h | Cole ¶ 145; Mitzenmacher ¶ 117 |
| 2 | C:\DATA\HIPS Rules\HIPSRules-10-3-149.lua | Cole ¶¶ 192, 268, 342, 385, 422, 476, 705, 825; Mitzenmacher ¶¶ 97, 496-497, 600, 690 |
| 3 | vdl60.src | Cole ¶¶ 252, 351, 457, 686, 710, 806, 830 |
| 4 | //dev/engine/trunk/modules/engine/source/sarc/pdflib.c | Cole ¶ 259, 358, 464, 693, 717, 813, 837; Mitzenmacher ¶¶ 124, 582, 600, 681, 690 |
| 5 | JSAnalyse | Mitzenmacher ¶¶ 124, 582, 600, 681, 690 |
| 6 | JSLex | Mitzenmacher ¶¶ 124, 582, 600, 681, 690 |
| 7 | PDFparse | Mitzenmacher ¶¶ 124, 582, 600, 681, 690 |
| 8 | PDFlex | Mitzenmacher ¶¶ 124, 582, 600, 681, 690 |
| 9 | CX identity | Mitzenmacher ¶ 471 |
| 10 | ExpJs identity | Mitzenmacher ¶¶ 471, 474 |
| 11 | //dev/engine/trunk/modules/savi-direct/source/cloud4.c | Mitzenmacher ¶ 521 |
| 12 | icloud4.c | Mitzenmacher ¶¶ 521, 530, 535, 539 |
| 13 | icloud4.h | Mitzenmacher ¶¶ 521, 530, 535, 539 |
| 14 | icloud.c | Mitzenmacher ¶¶ 521, 530, 535, 539 |
| 15 | icloud.h | Mitzenmacher ¶¶ 521, 530, 535, 539 |
| 16 | CXweb | Mitzenmacher ¶ 474 |
| 17 | JSRedir | Mitzenmacher ¶ 474 |
| 18 | SBRedir | Mitzenmacher ¶ 474 |
| 19 | Sus01.src | Mitzenmacher ¶¶ 477, 479, 481-483 |
| 20 | Gene.src | Mitzenmacher ¶ 478, 480 |
| 21 | //projects\OPM10.3.2Onwards\maint\MRB6.5\epp\src\swis\src\QueryTask | Mitzenmacher ¶ 484, 538 |
| 22 | HTTPFilter.cpp | Mitzenmacher ¶ 529 |
| 23 | HTTPFilter.h | Mitzenmacher ¶ 529 |
| 24 | HTTPMessage.cpp | Mitzenmacher ¶ 529 |
| 25 | HTTPMessage.h | Mitzenmacher ¶ 529 |
| 26 | SwisQuery.cpp | Mitzenmacher ¶ 529 |
| 27 | SwisServiceLib.cpp | Mitzenmacher ¶ 538 |
| 28 | SwisServiceLib.h | Mitzenmacher ¶ 538 |
| 29 | SwisService.cpp | Mitzenmacher ¶ 538 |
| 30 | SwisService.h | Mitzenmacher ¶ 538 |
| 31 | ReportManager | Mitzenmacher ¶ 538 |
| 32 | projects\OPM10.3.2Onwards\maint\MRB6.5\epp\src\swis/include/SwiServiceLib.h | Mitzenmacher ¶ 540 |

# DECLARATION

| | |
|---|---|
| SEAN CUNNINGHAM (Bar No. 174931)<br>sean.cunningham@dlapiper.com<br>KATHRYN RILEY GRASSO (Bar No. 211187)<br>kathryn.riley@dlapiper.com<br>**DLA PIPER LLP (US)**<br>401 B Street, Suite 1700<br>San Diego, CA  92101-4297<br>Tel:  (619) 699-2700<br>Fax:  (619) 699-2701<br><br>SUMMER K. TORREZ (Bar No.264858)<br>summer.torrez@dlapiper.com<br>KRISTA CELENTANO (Bar No. 279526)<br>krista.celentano@dlapiper.com<br>**DLA PIPER LLP (US)**<br>2000 University Avenue<br>East Palo Alto, CA  94303-2215<br>Tel: 650.833.2000<br>Fax: 650.833.2001 | TODD PATTERSON (*pro hac vice*)<br>todd.patterson@dlapiper.com<br>**DLA PIPER LLP (US)**<br>401 Congress Avenue, Ste. 2500<br>Austin, TX 78701-3799<br>Tel: 512.457.7000<br>Fax:  512.457.7001<br><br>ANDREW N. STEIN (*pro hac vice*)<br>andrew.stein@dlapiper.com<br>**DLA PIPER LLP (US)**<br>500 Eighth Street NW<br>Washington, D.C.  20001<br>Tel: 202.799.4000<br>Fax: 202.799.5000 |

Attorneys for Defendant
SOPHOS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>           Plaintiff,<br><br>v.<br><br>SOPHOS INC.,<br><br>           Defendant. | CASE NO.  3:14-cv-01197-WHO<br><br>**DECLARATION OF ROSS MCKERCHAR**<br><br>Judge:  William H. Orrick |

WEST\270425001.1

I, Ross McKerchar, submit this declaration to address the difficulties and risks to Sophos if Sophos is required to allow live access to its released and still under development source code stored in the Perforce source code repository ("Perforce") during trial in this case.

1. I am the Director of IT Security at Sophos. I lead a team of 13 security professionals responsible for securing Sophos's computer resources and its intellectual property.

2. For security and performance reasons, Perforce is not intended to be used for public or offsite presentations. Rather, Perforce is a developer tool used by Sophos's development groups in Sophos's day-to-day product engineering operations to manage revisions to Sophos's highly confidential source code and to develop and maintain Sophos's products. Perforce is susceptible to timeouts and functionality problems, particularly when the network connection is unstable or does not have sufficient bandwidth. Perforce is also susceptible to these problems during periods of high development activity like build operations or source code maintenance. For these security and performance reasons, Sophos's standard practice is for its employees to use Perforce on-site from inside Sophos's secure firewall.

3. To my knowledge, Sophos has never provided remote access to source code in Perforce in the way Finjan is now requesting. Providing this kind of off-site access would take significant effort beyond what is normally required for system administration and configuration, would create new security risks that Sophos would not approve in the ordinary course, and may not work as desired through the Court's computer network.

4. When Sophos employees need to have remote access to Perforce, Sophos follows strict security protocols. These protocols require a specially configured, Sophos-owned computer, employing secure communications links, user log-in, and a two-factor security token. Additionally, a remote user is only provided access to a subset of the Perforce source code repository; that is, only the source code on which the engineer is assigned to work. Furthermore, for remote access, Sophos does not have a "super-user" account that would permit access to all of the code in the Perforce repository and would also be limited to read-only access. While I believe creating such a remote access "super-user" account is possible, I estimate it would require several days for me and my team to research and design the account with appropriate read-only access

1  and to test it to make certain that it is working properly.  "Read-only" access to the code base is
2  very important because we would not want Finjan or anyone else to accidentally or deliberately
3  introduce changes into the code base as it would be harmful to Sophos's products and business
4  operations, requiring significant time and expense to correct.  My team has begun researching
5  possibilities, but we have not finished our work as of the date of this declaration.

6      5.      Additionally, broad access to our operational source code system in the manner
7  requested by Finjan would require that a Sophos employee be responsible for the security of the
8  Sophos computer during the trial, and when it was not being used in the courtroom.  This would
9  require another Sophos employee to be present throughout the trial, and not conducting his or her
10 regular work tasks.  That person also would need to be responsible for bringing the computer to
11 the courtroom, initiating and monitoring each access, taking it back at night, and securing it
12 appropriately.  In addition to the cost of travel, room, and board for that individual, it would be a
13 significant burden on our information technology operations to have someone removed from their
14 usual work for two or more weeks for this purpose.

15      6.      Typically, preparing and configuring a computer for remote access to Perforce in
16 compliance with Sophos's security requirements requires at least two to three days to complete.
17 However, because of the unusual nature of this request, we will also require another two or more
18 days of administrative implementation time for the network account and security policy changes
19 and requisite approvals to be fully implemented.  Creating the type of remote access requested by
20 Finjan significantly adds to the "attack surface" that an attacker could use to gain access to
21 Sophos source code.  My security team would need to spend time and resources evaluating
22 additional protections that might be used for this particular computer and the network connections
23 that would be used by the computer, in order to properly protect the source code without creating
24 additional performance impact.  Our information technology team is very busy, and this
25 additional work would be a burden on our operations.

26      7.      Providing the requested remote access described above would also create business
27 risks that Sophos would not approve in the ordinary course.  Sophos is very protective of its
28 source code, and with good reason, granting access and securing that code is not something that

-2-

-3-

can be accomplished in just 10 minutes of tinkering. The business risks to Sophos if its released or under-development source code were compromised are substantial. Sophos spends a great deal of time and millions of dollars developing its hardware and software products. If Sophos's source code were inadvertently exposed Sophos's business losses would be substantial. And because Sophos is a cyber-security company, any compromise of its source code would damage its reputation in the industry and with its existing and potential customers. A breach of Sophos's security would create the impression that Sophos cannot protect its own intellectual property, and so raises the question that Sophos may not be able to protect its customers' intellectual property.

8. A security compromise also would likely directly harm Sophos's customers by providing malware authors access to the methods and techniques that Sophos's products use to identify and stop malware. In essence, access to Sophos's source code would effectively provide a roadmap for cybercriminals to create new and more harmful malware.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration is executed on August 15, 2016, in Abingdon, UK.

Ross McKerchar