UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., | Case No. 14-cv-01197-WHO |
| Plaintiff, | |
| v. | **ORDER ON SOPHOS'S & FINJAN'S** |
| | ***DAUBERT* MOTIONS AND MOTIONS** |
| SOPHOS, INC., | ***IN LIMINE*** |
| Defendant. | Re: Dkt. Nos. 216, , 217 |

## INTRODUCTION

This is a patent infringement action involving technologies for computer and network security. Plaintiff Finjan, Inc. ("Finjan") accuses defendant Sophos, Inc. ("Sophos") of infringing 14 different claims from six different patents.[1] Trial is set for September 6, 2016.

I previously issued an Order on Matters Heard on May 11, 2016 that, among other things, precluded Sophos from asserting as prior art in this case the particular combination of SWEEP-

---

[1] The 14 asserted claims of the six asserted patents are:

(1) claim 1 of U.S. Patent No. 8,141,154 ("the '154 patent");

(2) claims 1, 10, 14, and 18 of U.S. Patent No. 8,677,494 ("the '494 patent");

(3) claim 1 of U.S. Patent No. 8,566,580 ("the '580 patent");

(4) claims 9 and 18 of U.S. Patent No. 6,804,780 ("the '780 patent");

(5) claims 1, 7, 16, and 43 of U.S. Patent No. 6,154,844 ("the '844 patent"); and

(6) claims 18 and 22 of U.S. Patent No. 7,613,926 ("the '926 patent").

Joint Pretrial Statement at 2 (Dkt. No. 218). Finjan also previously accused Sophos of infringing claim 22 of U.S. Patent No. 7,757,289 and claim 12 of U.S. Patent No. 7,613,918, but I granted Sophos's motion for summary judgment of noninfringement on those claims. *See id.* at 1 n.1.

United States District Court
Northern District of California

InterCheck (a "combined product" developed by Sophos) that Sophos had used to invalidate Finjan's asserted claims in a prior action between the parties in the District of Delaware (the "Delaware Action").  Dkt. No. 205 at 2-3, 12-17.  The excluded combination was SWEEP-2.72 & InterCheck-2.11.[2]  *Id.* at 17.  Sophos subsequently filed an Amended Final Election of Asserted Prior Art electing a different SWEEP-InterCheck combination, SWEEP-2.72 & InterCheck 2.01, as prior art in this case.  Dkt. No. 208.

The parties have since filed *Daubert* motions and a number of motions *in limine* in preparation for trial.  The motions largely concern the admissibility of the parties' expert testimony on damages and the secondary consequences of the Prior Order's exclusion of SWEEP-2.72 & InterCheck-2.11 and other evidence from trial.  I heard argument from the parties at the pretrial conference on August 8, 2016.  On August 15, 2016 I granted in part Sophos's *Daubert* motion to exclude testimony of Dr. Layne-Farrar.  I rule on the remaining motions as stated below.[3]

## LEGAL STANDARD FOR EXPERT TESTIMONY

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> Fed. R. Evid. 702.

---

[2] I also excluded the combination of SWEEP-2.77 & InterCheck-2.01.  Dkt. No. 205 at 17.
[3] On August 21, 2016 Finjan filed supplemental evidence in support of its motion for summary judgment of validity of the '154, '494, '780, '844, and '926 patents over SWEEP InterCheck.  I will wait to rule on Finjan's summary judgment motion until after Sophos has had time to file a response.

Expert testimony is admissible under Rule 702 if it is both relevant and reliable.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue."  *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (internal quotation marks omitted).

Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline."  *Primiano*, 598 F.3d at 565.  To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance."  *Id.*  These factors are "helpful, not definitive," and a court has discretion to decide how to test reliability "based on the particular circumstances of the particular case."  *Id.* (internal quotation marks and footnotes omitted).  "When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience."  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).

The inquiry into the admissibility of expert testimony is "a flexible one" where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Primiano*, 598 F.3d at 564.  "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010).  The burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the admissibility requirements are satisfied.  *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *see also* Fed. R. Evid. 702 advisory committee's note.

**DISCUSSION**

United States District Court
Northern District of California

**I.   FINJAN, INC.'S *DAUBERT* MOTIONS**

    **A.  Finjan's *Daubert* Motion No. 1 to Exclude Napper's Opinions Regarding Damages**

      Finjan seeks to exclude expert testimony from Brian Napper regarding damages.  Finjan contends that Napper's testimony is unreliable for four reasons: (1) Napper's market-share approach is based on an unreliable methodology; (2) Napper has no reliable basis for his "extent-of-use" theory of damages; (3) Napper's opinions regarding fees as a percentage of company-wide revenues are unreliable; and (4) Napper's opinion omits infringing components and products.  Finjan Mot. 1-11. (Dkt. No. 216).

      Sophos argues that Napper's testimony is reliable and rebuts Finjan's four rationales for excluding his testimony as follows: (1) Napper's approach is reliable and admissible; (2) Napper's "extent-of-use" methodology is reliable and admissible; (3) Napper's opinions regarding license fees compared to company-wide revenues will assist the jury; and (4) Napper does not omit infringing components and products.  Sophos Oppo. 1-11. (Dkt. No. 230).  I address each of the parties' arguments in turn below.

    **1.  Market Share Approach**

      Finjan argues that Napper's market-share methodology is unreliable because it does not take into account prior evidence of license negotiations or custom in the industry and because there is no evidence that either party would use market-share percentages in their negotiations for patent royalties.  Finjan Mot. 2.

      Finjan cites several cases indicating that failure to consider past licensing practices or to account for actual negotiations between the parties is grounds to exclude damages testimony.  *See e.g.*, *Riley v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002) (remanding damages where expert's damages calculations were inconsistent with past licensing practices); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561 (Fed. Cir. 1983) (district court erred in assessing the likely outcome of hypothetical negotiations by failing to take into account prior "actual negotiations" between the parties).  These cases do not apply to the facts here where Sophos has presented evidence that Napper did consider the licensing practices of Finjan, and where there

United States District Court
Northern District of California

were no actual negotiations between Finjan and Sophos to rely on or ignore.

Sophos provides evidence that Finjan considered market share in forming its licensing agreements, including evidence that some of Finjan's licensing agreements include provisions to increase royalties if the licensee's market share increases. Sophos Mot. 1-2. This evidence suggests that Napper did consider Finjan's past licensing negotiations in creating his damage estimate and that market share is a relevant factor to estimating a reasonable royalty.

Finjan further argues that Napper's failure to consider the forecasted sales and growth in market share for any of the licensees makes his damages calculation unreliable. Finjan Mot. 3. Sophos rebuts that Napper did take forecasted sales of licensees into account as he relied on Finjan's actual licensing agreements which implicitly incorporate all of the factors Finjan and the licensees considered. Sophos Oppo. 2-3. Sophos argues that Napper's use of Sophos's market share at the time of negotiations, rather than its projected market share, in calculating Sophos's hypothetical royalty payments is an issue on which reasonable experts can disagree. *Id.* Finjan again cites to *Riley*, and *Stickle*, and argues that failure to take into account actual practice and negotiations of the industry makes Napper's calculations unreliable. Again, these cases are not applicable here as Sophos has presented evidence that Napper did take the licensing and negotiating practices of Finjan into account. Napper's testimony should therefore not be excluded on this basis.

Next Finjan contends that Napper's testimony is unreliable because he fails to tie proof of damages to each patent's footprint in the market. Finjan Mot. 3. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("[E]xpert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place."). Finjan argues that Napper improperly relies on company-wide revenues and made no effort to apportion the market share percentages to the specific technologies at issue. *Id.* at 4. Sophos asserts that the licensee agreements on which Napper relies necessarily reflect Finjan's total patent portfolio's footprint in the market and that Napper's product-specific market share analysis is used only to account for the fact that Sophos would have purchased only a subset of Finjan's total patent portfolio. Sophos Oppo. 3-4.

United States District Court
Northern District of California

1     Finjan cites to *Open Text S.A. v. Box, Inc.*, in which the court excluded damage testimony

2     that "made no effort . . . to quantify the amount attributable to the patents-in-suit" in calculating a

3     portion of the royalty base.  No 13-cv-04910-JD, 2015 WL 349197, *4 (N.D. Cal. Jan. 23, 2015).

4     However, Sophos has pointed to evidence that Napper did attempt to quantify the amount

5     attributable to the patents-in-suit.  Further, while the *Open Text* court criticized the expert's

6     analysis for failing to tie proof to the patents' footprint, the court's holding to exclude the

7     testimony hinged on the expert's failure to explain her calculations or "spell[] out the steps she

8     took to go from the data to the royalty rate opinion" which precluded the opposing party from

9     meaningfully cross-examining her on her analysis.  *Id.* at *6.  Napper's calculations are designed

10    to take into account the relevant market shares for each individual product at issue and therefore

11    attempt to tie proof of damages to each patent's footprint in the market.  While Finjan may

12    disagree with his methods and calculations, because Napper has presented and explained his

13    process, Finjan may examine him on any deficiencies in his calculation.  Napper's testimony

14    should not be excluded on this basis.

15    Next Finjan argues that Napper's testimony must be excluded as he has failed to provide

16    an opinion on how the jury could assess damages if fewer than all six patents are found valid and

17    infringed.  Finjan Mot. 5.  Sophos asserts that Napper is not required to provide a per-patent

18    licensing rate.  *Id.*  Finjan cites to *Mirror Worlds, LLC v. Apple, Inc.*, in which the court vacated a

19    jury award because, after indirect infringement claims were dismissed, the plaintiffs did not

20    adequately supplement their damage evidence resulting in "insufficient evidence to determine how

21    [plaintiff's expert] would have re-evaluated his damages calculation" for the remaining claims.

22    784 F. Supp. 2d 703, 724-26 (E.D. Tex. 2011).  *Mirror Worlds* does not support excluding expert

23    testimony for failure to conduct a per-patent damage analysis.  *Id.*  The court's holding in *Mirror*

24    *Worlds* was that the jury had insufficient evidence to support its damage award, not that the

25    plaintiffs' expert's testimony was unreliable for failing to present evidence on a per-patent basis.

26    *Id.*  An expert's testimony is not made unreliable simply because it does not address certain issues

27    or offer an opinion on every potential topic.  Fed. R. Evid. 702.  Further, the *Mirror Worlds*

28    holding, which relates to the sufficiency, not reliability, of evidence, does not apply to Sophos's

expert, because Sophos, as the defendant, does not have the burden of producing damage evidence. Napper's testimony should not be excluded on this basis.

Finally, Finjan protests that Napper improperly uses market shares from 2005 and 2011 rather than market shares in 2014, the time of the hypothetical negotiation. Finjan Mot. 5. Finjan cites several cases in support of the claim that an expert must determine a reasonable royalty of damages by looking at a hypothetical negotiation at the time infringement began. *See e.g.*, *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 1737951, at *2 (N.D. Cal. Apr. 8, 2015) ("The hypothetical negotiation is a legal construct that attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.") (internal citation omitted). This premise is not in dispute and does not address whether it is improper for Napper to use market share calculations from 2005 and 2011 as part of his overall calculation and process.

Sophos explains that Napper uses the 2005 and 2011 market share in order to reach a meaningful comparison between Sophos and two of Finjan's licensees, which executed licensing agreements in those years. Sophos Oppo. 5. Napper then uses these calculations to assess what a hypothetical negotiation between Sophos and Finjan would have looked like in 2014. Napper's hypothetical negotiation is therefore properly set around the time the alleged infringement began and his testimony should not be excluded on this basis.

While Finjan has pointed to potential weaknesses in Napper's analysis, "[s]hakey but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. None of Finjan's attacks on Napper's market-share damage analysis suggest that the testimony is unreliable and must be excluded. I therefore DENY Finjan's motion to exclude Napper's testimony on the basis that his market share approach is unreliable.

### 2. Extent-of-Use theory

Finjan argues that Napper's extent-of-use theory of damages should be excluded because he has no foundation for his assumption that the percentage of malware an infringing part blocks, should be equal to the percentage of revenue the infringing part accounts for in the entire product's

7

United States District Court
Northern District of California

1    revenues.  Finjan Mot. 6.  Napper's extent-of-use theory first looks at "how much malware the

2    accused technology (the SAV Engine) blocks, as compared to other, non-accused parts of the

3    product."  Sophos Oppo. 6.  Then, under his extent-of-use theory, he assumes that this percentage

4    reflects the percentage value that the accused technology contributes to the entire value of the

5    product.  *Id.*  After finding that the accused technology accounts for .5 or .6 percent of the total

6    malware the product blocks, Napper applies this percentage to the product's total value to

7    determine the accused technology's relative value or contribution.  *Id.*

8           Finjan asserts that this analysis is fundamentally flawed because "there is no foundation for

9    Mr. Napper's assumption that each percentage of malware blocked is equivalent to $1 worth of

10   sales of an accused product."  Finjan Mot. 6.  This assertion does not accurately reflect Napper's

11   theory or calculation – Napper instead assumes that each percentage of malware blocked is

12   equivalent to one percent of the sales value of an accused product.  Sophos Oppo. 6.  Further,

13   Sophos cites to cases in support of its extent-of-use theory which acknowledge that "use of the

14   claimed invention is relevant under *Georgia-Pacific*."  *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,

15   802 F.3d 1283, 1298 (Fed. Cir. 2015); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d

16   1301, 1333 (Fed. Cir. 2009) ("[A]n invention used more frequently is generally more valuable

17   than a comparable invention used infrequently" and "frequency of expected use and predicated

18   value are related.").  These cases support Napper's analysis in which he assumes a relationship

19   between the use value of the infringing parts (measured by total percentage of malware blocked)

20   and their relative contribution to the product's total value (products whose primary function is to

21   block malware).  Sophos Oppo. 6.  Napper's extent-of-use theory should not be excluded on this

22   basis.

23          Finjan further contends that Napper's extent-of-use analysis is unreliable because his

24   calculations are based on data from previous versions of the accused products, rather than the

25   accused products themselves and Napper includes no explanation for why this would be

26   appropriate.  Finjan Mot. 7.  Sophos points to specific evidence suggesting that data for the

27   previous versions Napper analyzed and data for the accused products would be very similar and

28   Napper lists some of this evidence under the materials "reviewed and considered" in Exhibit 4 of

8

his report.  Sophos Oppo. 7; Napper Rpt. Ex. 4 (Dkt. No. 214-6).  Rule 26 requires that an expert report contain the "basis and reasons" for opinions and the "facts and data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(2).  Napper has provided sufficient basis and reasons for his opinions and has included facts and data in his report in support.  Finjan can cross-examine Napper on whether his use of data from the previous versions was justified.  Napper's use of the previous versions' data does not justify excluding his extent-of-use theory.

Finjan finally argues that Napper's extent-of-use theory is unreliable because (1) he does not calculate damages on a per-patent basis, and (2) because he does not have factual support for his conclusion that the accused part's functionality makes up 3.5 percent of the SAV engine because he derived this figure from the .6 percent figure that Finjan disputes above.  As discussed above, Napper is not required to present a per-patent theory of damages.  Fed. R. Evid. 702.  Finjan's argument regarding the 3.5 percent figure is duplicative of its previous argument regarding the .6 percent figure.  For the reasons discussed above, neither of these points justifies excluding Napper's extent-of-use theory.  I therefore DENY Finjan's motion to exclude Napper's extent-of-use theory.

### 3.   Fees as Percentage of Company-Wide Revenues Are Unreliable

Finjan argues that Napper's testimony regarding fees as a percentage of company-wide revenues is unreliable because it is completely irrelevant to the value of the patented technology and would do nothing to inform the jury.  Finjan Mot. 8.  Finjan argues that a royalty of damages must be calculated based on a hypothetical negotiation and may not always track with the size of the business using the patented technology.  *See Snellman v. Ricoh Co.*, 862 F.2d 283, 289-90 (Fed. Cir. 1988) (holding that a damage award four times a product's sales revenue was not a "miscarriage of justice").  While this may be true as a general rule, in this case, Sophos has presented evidence that Finjan used company size to inform its licensing agreements and argues that this evidence will therefore help the jury assess what a reasonable damage amount might be.  Sophos Oppo. 8.  As I believe Napper's testimony on this issue may be relevant to a damage award I DENY Finjan's motion to exclude Napper's testimony regarding fees as a percentage of company-wide revenues.

United States District Court
Northern District of California

#### 4.   Napper's Opinion Omits Infringing Components Products

Finjan argues that Napper's opinions are unreliable because he omitted certain product features in his analysis and therefore did not assume the proper scope of infringement.  Finjan Mot. 9.  Sophos contends that Napper excluded only products that were not at issue in the case so this analysis does not impact the scope of infringement and does not make his opinions unreliable. Sophos Oppo. 9.  At the hearing on August 8, 2016 counsel for Finjan and Sophos continued to disagree on which products should be considered in the damage analysis.  As this appears to be a minor and continuing dispute between the experts, it is not appropriate to exclude Napper's testimony on this basis.

Finjan next contends that Napper's testimony should be excluded because he does not include a separate damage analysis for SophosLabs.  Finjan Mot. 9.  Sophos rebuts that there is no need to separately calculate damages for SophosLabs, because it is a product included within other products and its value is embedded within those products.  Sophos Oppo. 9.  Sophos further asserts that if SophosLabs was found to be the only infringing product, Napper has pointed to evidence in his deposition, that UTM products would provide a basis for assessing the value of SophosLabs.  *Id.*  As this appears to be another minor disagreement between experts, Finjan's critique on this point would be better addressed through cross-examination and does not justify excluding Napper's testimony.

Finjan next argues that Napper's testimony should be excluded because Sophos misrepresented that certain SKUs in the data were for accused products when they in fact were not.  Finjan Mot. 10. Finjan points to evidence that Sophos's counsel informed Finjan that all SKUs in a particular data set related to accused products, but notes that Napper excluded revenue for some of these products in his own analysis on the basis that they were not accused products. *Id.*  Finjan cites to *Coloplast A/S v. Generic Medical Devices Inc.*, for the proposition that it would be "unfair and unjustified to represent one position during discovery, then advantageously switch positions after discovery has closed" and contends that on this basis, Napper's testimony should be excluded as unreliable.  No. C10-227, 2011 WL 6330064 (W.D. Wash. Dec.  19, 2011).  This language from *Coloplast* is dicta, and though it suggests some remedy is appropriate, it does not

10

United States District Court
Northern District of California

1    sufficiently address the *Daubert* question at hand, whether Napper's testimony is reliable.  While

2    there is evidence that Sophos misled Finjan on this point, this misrepresentation does not justify

3    excluding Napper's testimony on *Daubert* grounds.  In fact, Finjan's criticism suggests that

4    Napper's report may be more reliable than its own expert's because Napper knew to exclude

5    certain irrelevant revenue where Finjan's expert did not.  Finjan has been granted leave to amend

6    this portion of its damage report and any remaining prejudice to Finjan on this issue may be

7    addressed with a limiting instruction.  Exclusion is therefore not appropriate.

8            Finally, Finjan argues that Napper excluded government sales from his damages

9    calculation but provided no explanation for how he determined which sales were "for the

10   Government."  Finjan Mot. 11.  Finjan therefore contends that Napper should be precluded from

11   testifying that government sales should be excluded from the damage calculation.  *Id.*  Sophos

12   notes that Napper did not exclude government sales from his damage calculations and explains

13   that Finjan may have misinterpreted a discussion in Napper's report addressing Finjan's experts'

14   discussion on this topic.  Sophos Oppo. 10.  This point is therefore moot.

15           While Finjan identifies several potential problems with Napper's analysis, these relatively

16   minor and discrete issues are best suited to challenge through "cross examination, contrary

17   evidence, and attention to the burden of proof, not exclusion."  *Primiano*, 598 F.3d 564.  For the

18   reasons outlined above I DENY Finjan's motion to exclude Napper's testimony on these bases.

19           **B.  Finjan's *Daubert* Motion No. 2 to Exclude Dr. Cohen's Invalidity Opinions**

20                   **1.   Dr. Cohen's Obviousness Opinions**

21           Finjan moves to preclude Cohen from sharing any obviousness opinions with the jury on

22   the ground that each of the obviousness theories disclosed in his report depends on prior art

23   references that were either voluntarily dropped by Sophos or excluded by the Court in the Prior

24   Order.  Finjan Mot. 11-12.  Sophos responds that Cohen's report includes several obviousness

25   theories that remain viable after the Prior Order.  Sophos Oppo. 11.  The only such theories that

26   Sophos identifies are Cohen's assertions that certain asserted claims (claim 7 of the '844 patent,

27   claim 14 of the '494 patent and claim 18 of the '926 patent) would have been obvious to a

28   PHOSITA.  *Id.* (citing Cohen Rpt. 120, 129-30, 179, 204).

United States District Court
Northern District of California

At the hearing on August 8, 2016, counsel for Finjan argued that these three remaining obviousness opinions should be excluded as they are entirely conclusory and Cohen offers no meaningful explanation or foundation for them.  Counsel for Sophos rebutted that Cohen did provide a single sentence of explanation and argued that "it doesn't have to be complex to be right."  While I agree that an obviousness opinion need not necessarily be complex, even a simple analysis requires an explanation and foundation so that a fact finder can evaluate and assess the opinion. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.").  As Cohen has not sufficiently articulated his reasoning or outlined a reliable foundation for his obviousness opinions, this portion of Finjan's *Daubert* motion is GRANTED.

### 2.  Dr. Cohen's Anticipation Theories

Finjan moves to exclude Cohen's opinions that (1) SWEEP-InterCheck anticipates claim 7 of the '844 patent; and (2) the Takeshima and Smith references anticipate claim 1 of the '580 patent.  Finjan Mot. 12-14.  This motion is DENIED.  Finjan contends that Cohen's anticipation opinion for claim 7 of the '844 patent is defective because it relies on the Demo2 programs, which are based on the excluded combination of SWEEP-2.72 & InterCheck-2.11.  *Id.* at 12-13.  As discussed below, however, the extent to which the unelected combinations of SWEEP-InterCheck are representative of the functionality of SWEEP-2.72 & InterCheck-2.01 is a question for the jury.  With respect to claim 1 of the '580 patent, Finjan complains that Cohen's analysis of how Takeshima and Smith encompass certain claim limitations lacks sufficient detail to be admissible under Rule 702.  *Id.* at 13-14 (citing Cohen Rpt. at 293, 299-301).  Cohen's analysis is thin, but I am satisfied that it is sufficiently detailed to be presented at trial.

## II.  FINJAN, INC.'S MOTIONS *IN LIMINE*

### A.  Finjan's Motion *in limine* No. 1 to Preclude Derogatory or Misleading Characterizations of Finjan's Business

Finjan moves to preclude Sophos from characterizing Finjan as a "patent assertion entity," a "company that doesn't make or sell anything," or what it refers to as "similar derogatory names."

12

Finjan Mot. 14. Finjan argues that such characterizations would be inaccurate as Finjan has and does produce and sell products using its patented technology and because such terms would be prejudicial and mislead the jury. *Id.* Sophos intends to produce evidence regarding Finjan's business, which is relevant to a damage analysis. *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). I find the court's approach to a similar motion in *Finjan Inc. v. Blue Coat Systems Inc.* persuasive. No. 13-cv-03999-BLF, 2015 WL 4129193, at *2 (N.D. Cal. June 8, 2015). Sophos may present "neutral, factual statements" concerning Finjan's business, but may not use terms such as "patent troll" and "patent assertion entity." *Id.* Finjan's Motion *in limine* No. 1 is GRANTED as to uses of the terms "patent assertion entity" or "patent troll" but DENIED as to factual and neutral statements regarding Finjan's business.

> **B. Finjan's Motion *in limine* No. 2 to Exclude Irrelevant Payment and Retention Information.**

Finjan moves to exclude any evidence regarding payments made to its consultants and experts other than payments made in connection with the current litigation and the IPRs Sophos attempted to initiate on Finjan's asserted patents. Finjan Mot. 16. Finjan argues that this information is irrelevant, would be unfairly prejudicial, and would violate these individuals' right to privacy. *Id.* Sophos argues that the consultants' and experts' compensation is relevant to assessing their bias and that this outweighs any privacy concerns.

In *Blue Coat*, the court addressed a similar motion aiming to exclude compensation evidence related to Finjan's consultants. 2015 WL 4129193, at *4. The court noted that while compensation is "unquestionably relevant to a witness's bias" the particular relationship Finjan has with these consultants, which is "continuous, ongoing, and not limited to litigation purposes" makes these consultants more akin to employees than experts and that disclosure of total compensation to these individuals would be "more unfairly prejudicial than probative." *Id.*; Fed. R. Evid. 403. The court noted that the question was a close one and that its decision hinged on "the particular nature of the consulting relationship between [Finjan] and its two consultants." *Id.*

Here, Finjan again aims to exclude compensation information as to these consultants, but also for seven experts that Finjan has retained for this litigation and which Finjan has used in other

United States District Court
Northern District of California

patent proceedings.  Finjan Mot. 16.  Though Finjan has used these experts in prior litigation, these facts do not suggest that Finjan's relationship with these experts is "more akin to employees than experts."  *Blue Coat*, 2015 WL 4129193, at \*4.  However, while cross-examining these experts on their total compensation may be relevant to assessing bias, I am not convinced that Sophos could not similarly demonstrate any such bias by questioning the experts on their compensation in this case as well as the total number of cases they have worked on for Finjan.  Since I believe Sophos can address any bias without revealing the exact dollar amount Finjan's experts have been paid, I GRANT Finjan's motion *in limine* No. 2.

### C.  Finjan's Motion *in limine* No. 3 to Exclude Sophos's Patents

Finjan moves to exclude any reference to Sophos's patents which it contends are irrelevant and are likely to confuse the jury.  Finjan Mot. 17.  Sophos counters that its patents are relevant to explaining Sophos's background and expertise in the malware industry, and to rebutting Finjan's claims that Sophos willfully infringed Finjan's patents.  Sophos Oppo. 15-16.

In *Blue Coat*, the court addressed a similar motion and concluded that Finjan's request to exclude any evidence regarding the defendant's patent portfolio "sweeps too broadly" and denied Finjan's motion to the extent it aimed to exclude "generalized background information about" defendant's business.  *Blue Coat*, 2015 WL 4129193, at \*2.  The court deferred to rule on whether individual patents could be introduced to the jury finding that, without context, it could not properly assess defendant's argument that individual patents would be relevant to rebutting any attempts by Finjan to paint defendant as a "bad actor."  *Id.*  Here, Sophos argues that its patents are relevant to rebut Finjan's specific claim that Sophos willfully infringed its patents.  Sophos Oppo. 16.  I agree that Sophos's patents may be relevant to rebut Finjan's claim of willful infringement.  *See e.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-cv-290, 2012 WL 5416440, at \*2 (W.D. Pa. Nov. 2, 2012) (finding evidence regarding defendants' patents was relevant to assessing the existence of "copying/willfulness").  Finjan's motion *in limine* No. 3 is DENIED.  The parties should offer a limiting instruction on this issue to prevent this evidence from confusing the jury.

### D. Finjan's Motion *in limine* No. 4 to Exclude Irrelevant Proceedings

Finjan seeks to exclude evidence of (1) pending PTO proceedings, (2) co-pending litigations, and (3) prior litigation with Sophos on the basis that this evidence is irrelevant, and would confuse the jury. Finjan Mot. 17. I address these three categories of evidence in turn below.

Finjan argues that evidence of the pending PTO proceedings is irrelevant, non-probative, and prejudicial as these proceedings are non-final, do not reflect any decision or outcome as to the validity of Finjan's patents, and may confuse the jury or cause the jury to erroneously doubt the validity of the asserted patents. Finjan Mot. 18. Sophos does not attempt to rebut Finjan's claim or offer any argument as to why the PTO proceedings are relevant. I agree that the PTO proceedings are irrelevant to the current proceeding and therefore GRANT Finjan's motion *in limine* No. 4 with regards to the pending PTO proceedings.

Finjan next argues that evidence of co-pending litigations is irrelevant and would be highly prejudicial to Finjan as Sophos has used this evidence in the past to characterize these litigations as part of a "patent litigation campaign" and to suggest that Finjan does not operate a legitimate business. Finjan Mot. 18-19. Sophos argues that Finjan's "litigation practices, both past and current, are relevant to the determination of a reasonable royalty under the *Georgia-Pacific* factors. *Georgia-Pac.*, 318 F. Supp. at 1120 (the list of relevant factors include "the licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions"). The court analyzed and denied a similar motion from Finjan in *Blue Coat*, agreeing with the defendant in that case that co-pending litigation was relevant to the *Georgia-Pacific* factors and that any prejudice could be resolved with a limiting instruction. I agree and DENY Finjan's motion *in limine* No. 4 with regards to co-pending litigation evidence. The parties should offer a limiting instruction on this issue to prevent prejudice to Finjan.

Finally, Finjan argues that evidence of its prior litigation with Sophos in *Finjan v. McAfee Inc. et al.*, (the "Delaware action") should be excluded as it is irrelevant and would only confuse the jury and prejudice Finjan. Finjan Mot. 19-20. Sophos rebuts that evidence from the Delaware

1    action is relevant to Sophos's defense to Finjan's claim of willful infringement, is relevant to

2    calculating damages as the outcome of the prior lawsuit would have impacted the hypothetical

3    negotiation between the parties, and is relevant to non-infringement and invalidity.  Sophos Oppo.

4    17-18.

5         The cases Finjan cites in support of its claims that evidence of prior litigation would bias

6    Finjan and is "routinely excluded," do not support its assertions here as these cases address

7    whether prior litigation should be excluded due to the risk that such evidence might unfairly paint

8    a plaintiff as particularly litigious.  *Henderson v. Peterson*, No. C 07-2838, 2011 WL 2838169, at

9    *5 (N.D. Cal. July 15, 2011) (granting a motion to dismiss evidence of plaintiff's unrelated prior

10   litigation history as evidence of plaintiff's litigiousness); *Seals v. Mitchell*, No. cv-04-3764-NJV,

11   2011 WL 1399245, at *5 (N.D. Cal. April 13, 2011) ("evidence of Plaintiff's litigiousness is

12   inadmissible character evidence").  Sophos does not intend to admit evidence of the Delaware

13   action to assert that Finjan is particularly litigious and any risk that this evidence would prejudice

14   Finjan in this way is undermined by the fact that Finjan already intends to use and admit evidence

15   of multiple other lawsuits in its support.  Finjan Mot. 20.  The Delaware action appears to be

16   relevant to damages as the relationship and history and relationship between Finjan and Sophos

17   would likely impact the royalty price that Sophos would have been willing to pay at the point of

18   the hypothetical negotiation.  Further, the Delaware action appears to be relevant to Sophos's

19   defense against willful infringement.  It is not clear how the Delaware action is relevant to

20   invalidity and infringement as the Delaware action involved different claims than those at issue in

21   this case.  However, as it is relevant to other issues, this can be addressed with a limiting

22   instruction.  I therefore DENY Finjan's motion *in limine* No. 4 with regard to the Delaware action.

23        As outlined above I GRANT Finjan's motion *in limine* No. 4 with regards to the PTO

24   proceedings and DENY the motion with regards to the co-pending litigations and the Delaware

25   action.  The parties should offer limiting instructions regarding Sophos's potential use of the co-

26   pending litigations and the Delaware action.

27        **E.  Finjan's Motion *in limine* No. 5 to Exclude Any Obviousness Theories**

28        Sophos does not present any arguments in opposition to this motion apart from those

United States District Court
Northern District of California

discussed above with respect to the obviousness opinions of Cohen.  It identifies no other ways in which it would be able to present a legally viable obviousness case to the jury.  While expert opinion on obviousness may not be required where the technology at issue is "easily understandable," *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 (Fed. Cir. 2010) (internal quotation marks omitted), "expert testimony regarding matters beyond the comprehension of laypersons is sometimes essential, particularly in cases involving complex technology." *Id.* at 1240 n.5 (internal quotation marks omitted).  "In such cases, expert testimony may be critical, for example, to establish the existence of certain features in the prior art, or the existence (or lack thereof) of a motivation to combine references." *Id.* (internal citations omitted).  Accordingly, "it is well within a trial judge's discretion to require expert testimony supporting technical references that are relied on to establish obviousness." *In re Brimonidine Patent Litig.*, 643 F.3d 1366, 1376 (Fed. Cir. 2011).

Sophos makes a half-hearted attempt to argue otherwise, *see* Sophos Oppo. 23, but it cannot seriously contend that the technology at issue here is sufficiently simple for obviousness to be established by lay testimony alone.  In line with my ruling on the inadmissibility of Cohen's obviousness theories, this motion is GRANTED.

### F.  Finjan's Motion *in limine* No. 6 to Exclude Unelected Versions of SWEEP and InterCheck

Despite the broad title, this motion appears to be aimed at a handful of specific pieces of evidence regarding SWEEP-InterCheck: the Demo2 programs discussed at length in the Prior Order, two videos based on the Demo2 programs, and a number of manuals regarding SWEEP and/or InterCheck.  Finjan Mot. 21-22.  Finjan asserts that the items concern unelected combinations of SWEEP-InterCheck and should be excluded as irrelevant and unduly prejudicial. *Id.*

Sophos responds that the extent to which the items are representative of the functionality of SWEEP-2.72 & InterCheck-2.01 is a question for the jury.  Sophos Oppo. 20-21.  It points out that courts have allowed accused infringers to rely on different versions of prior art software as evidence of the functionality of elected versions. *See Leader Techs., Inc. v. Facebook, Inc.*, 678

1    F.3d 1300, 1306 (Fed. Cir. 2012) (rejecting plaintiff's argument that there was insufficient

2    evidence to support the jury's determination that the pre-critical date version of the prior art

3    software offered invalidated the asserted claims, where plaintiff "fails to point to any

4    contemporaneous evidence in the record that indicates that the [pre-critical date software] was

5    substantively different from the post-critical date software; indeed, the evidence points in the

6    opposite direction"); *Good Tech. Corp. v. Mobileiron, Inc.*, No. 12-cv-05826-PSG, 2015 WL

7    4197554, at *6 (N.D. Cal. July 10, 2015) (allowing defendant's invalidity expert to rely on

8    documents relating to versions 3.0 and 3.1 of the prior art software to establish the functionality of

9    version 3.1; determining that this was "a fact issue for the jury to decide").

10           This motion is GRANTED IN PART and DENIED IN PART.  As was the case with the

11   motions addressed in the Prior Order, neither party presents more than a scintilla of evidence

12   regarding the extent to which the unelected combinations of SWEEP-InterCheck are materially

13   different from SWEEP-2.72 & InterCheck-2.01.  In the absence of more conclusive evidence on

14   the differences between the various combinations, and the presence of at least some evidence

15   indicating that the combinations are indeed materially identical, I agree with Sophos that this is

16   largely a question for the jury to decide.  The exception is evidence of unelected combinations of

17   SWEEP-InterCheck that were not produced to Finjan during discovery.[4]  Because Finjan did not

18   have an opportunity to examine the particular functionality of those combinations, Sophos may

19   not rely on them at trial.  The parties should submit proposed limiting instructions regarding

20   unelected versions of SWEEP & InterCheck to clarify that these versions are being offered to

21   evidence the functionality of the elected versions, and are not themselves evidence of invalidity.

22           **G.  Finjan's Motion *in limine* No. 7 to Exclude References With No Evidence That**

23   **They Were Publicly Available**

24           Finjan moves to exclude two asserted prior art references on the ground that "Sophos has

25

26   ───────────────

27   [4] For example, Finjan asserts, and Sophos does not dispute, that Sophos did not produce a copy or
     provide the source code for InterCheck-2.00.  Dkt. No. 225 at 6 n.1.  It appears that Sophos
     intends to introduce its 1994/1995 Data Security Reference Guide, which concerns InterCheck-
28   2.00, as evidence of the pre-critical date availability of SWEEP-2.72 & InterCheck-2.01.  Dkt. No.
     213 at 2, 5-6, 6 n.5.

United States District Court
Northern District of California

provided no evidence that the references . . . were publicly available before the relevant priority dates." Finjan Mot. 22.  As Sophos points out, this is plainly an attempt to squeeze a second motion for summary judgment into this case.  *See* Sophos Oppo. 22.  If Sophos has no evidence that the references were publicly available, "then [Finjan] should have sought partial summary judgment on the issue." *Fujifilm Corporation v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, Dkt. No. 256 at 6 (N.D. Cal. Mar. 19, 2015) (denying motion *in limine* for failure to raise the issue at summary judgment).  This motion is DENIED.

### H.  Finjan's Motion *in limine* No. 8 to Exclude References That Were Part of Theories Stricken by the Court

This motion is DENIED as redundant and unnecessary.  The parties do not need a motion *in limine* ruling to know that they must comply with the Prior Order and other relevant law.

### I.  Finjan's Motion *in limine* No. 9 to Exclude Invalidity Claims Where Sophos Has No Remaining Invalidity Theory

This motion is GRANTED IN PART and DENIED IN PART.  Sophos points out that, with regards to claim 18 of the '926 patent, Cohen's opinion that the SWEEP-InterCheck prior art could receive a Downloadable that includes program script has not been struck.  Sophos Oppo. 22-23 (citing Cohen Rpt. at 179).  On the other hand, Sophos does not dispute that the Prior Order excluded a critical portion of Cohen's only invalidity theory for claim 1 of the '494 patent.  *See* Finjan Mot. 23; Sophos Oppo. 22-23.  Sophos argues that it can still establish the invalidity of claim 1 of the '494 patent through lay testimony regarding the prior art, *see id.*, but as discussed above, I disagree.  Accordingly, this motion is GRANTED with respect to claim 1 of the '494 patent and DENIED with respect to claim 18 of the '926 patent.

### J.  Finjan's Motion *in limine* No. 10 to Exclude Non-infringing Alternatives or Design-Arounds

Finjan moves to exclude evidence related to any non-infringing alternatives or design arounds on the grounds that Sophos did not disclose any alternatives during discovery in compliance with Federal Rule of Civil Procedure 26.  Finjan Mot. 24.  However Finjan admits that Sophos listed over 150 alleged "prior art technolog[ies] [that] may represent non-infringing

1   alternative products" in its responses to Finjan's Interrogatory No. 9. *Id.* Finjan asserts that it

2   would be prejudiced by any evidence related to non-infringing alternatives as it relied on Sophos's

3   assertions that none existed. *Id.* It is unclear how Finjan could have detrimentally relied on such

4   an assertion when it has noted that Sophos made claims to the contrary in Sophos's interrogatory

5   responses. *Id.* I therefore conclude that Sophos adequately disclosed its non-infringing

6   alternatives during discovery and DENY Finjan's motion *in limine* No. 10.

7        **K.  Finjan's Motion *in limine* No. 11 to Exclude Arthur Robinson's Testimony**

8   **Regarding Sophos's OEM Business**

9        Finjan moves to exclude testimony from Arthur Robinson regarding Sophos's OEM

10   business on the basis that Sophos did not disclose that Robinson had information on this subject

11   until after the close of discovery and so Finjan was precluded from deposing Robinson on the

12   subject. Finjan Mot. 24. Sophos rebuts that it adequately disclosed that Robinson had information

13   on Sophos's OEM business prior to the close of discovery as it disclosed that Robinson "may have

14   information regarding Sophos's and Finjan's previous business relationship" which both parties

15   understood was an OEM relationship. Sophos Oppo. 24. Sophos also notes that Finjan was aware

16   of Robinson's knowledge in this area as Robinson was designated as a 30(b)(6) witness to discuss

17   Sophos's OEM business in the Delaware action, and Robinson was questioned on this topic in the

18   Delaware action by Finjan's same counsel. *Id.* Based on Finjan's prior awareness of Robinson's

19   knowledge of Sophos's OEM business and its knowledge that Sophos's and Finjan's previous

20   business relationship was an OEM relationship, I conclude that Sophos's disclosure was sufficient

21   to alert Finjan to the general subjects on which Robinson might have discoverable information as

22   required by Federal Rule of Civil Procedure 26. I therefore DENY Finjan's motion *in limine* No.

23   11.

24        **L.  Finjan's Motion *in limine* No. 12 to Exclude Belated Expert Opinion Regarding**

25   **the Purported Extent of Use**

26        Finjan moves to exclude Napper's opinions related to his extent-of-use theory and his

27   opinion related to a ▮▮▮▮▮▮▮▮▮ license on the grounds that these opinions were produced

28   in a supplemental report on July 15, 2016, after Napper's deposition and only two months before

United States District Court
Northern District of California

20

United States District Court
Northern District of California

1    trial.  Finjan Mot. 25.  Napper's initial report relied on documents that were later excluded, and

2    Napper produced a supplemental report, relying on non-excluded documents, to re-calculate his

3    extent-of-use damages.  *Id.*  Napper's supplemental report also included new analysis of a

4    ███████████████ license that was produced on February 8, 2016, 11 days before Napper's

5    report was initially due.  Sophos Oppo. 25.  Sophos rebuts that Napper's corrected report, served

6    on March 16, 2016, six days before Napper's deposition cited to the correct non-excluded

7    documents and that Napper's supplemental report included only updated analysis based on these

8    documents.  *Id.* at 24-25.  It further rebuts that Napper did not have time to include analysis of the

9    ████████ license in his initial report, but was questioned on this omission at deposition, so

10   supplemented his report to include a ████████ license analysis.  *Id.* at 25.

11       It is unclear why, if Napper cited to the correct documents in his corrected report on March

12   16, 2016, he did not also include an updated analysis based on these documents.  Further, while

13   Napper may not have had sufficient time to analyze the ████████ license prior to his report's

14   initial due date, it is unclear why he did not include an updated analysis on this issue in his

15   corrected report served on March, 16, 2016 or in a different corrected report prior to his July 15,

16   2016 supplemental report.  However, Sophos contends that Finjan has not been prejudiced by

17   Napper's inclusion of updated analysis in his supplemental report and Finjan has offered no clear

18   explanation as to why this updated analysis has or will cause Finjan any prejudice.  *Id.*  As Finjan

19   has not explained why Napper's supplemental report will prejudice Finjan, I DENY Finjan's

20   motion *in limine* No. 12.

21   **III. SOPHOS, INC.'S *DAUBERT* MOTIONS[5]**

22       **A.  Sophos's *Daubert* Motion No. 2 to Exclude Dr. Medvidovic's Testimony about**

23       **Alleged Infringement and Analysis of Sophos's Marketing Documents**

24       Sophos moves to exclude Medvidovic's testimony on infringement.  Sophos Mot. 11.

25   Finjan rebuts that Medvidovic is not offering an opinion on infringement and notes that

26   Medvidovic explicitly states in his report that he is "not provid[ing] an opinion regarding

27

28   [5] I previously ruled on Sophos's *Daubert* motion No. 1 to exclude testimony of Dr. Layne-Farrar
     on August 15, 2016. (Dkt. No. 250).

1    infringement." Finjan Oppo. 11.

2         Sophos further argues that Medvidovic cannot rely on the opinions of Drs. Cole and

3    Mitzenmacher in reaching his infringement analysis. Sophos Mot. 12. Sophos cites to cases in

4    which courts have precluded experts from parroting the opinions of other experts or wholesale

5    adopting other experts' opinions without independent analysis. *See e.g.*, *Deutz Corp. v. City Light

6    & Power, Inc.*, 1:05-cv-3113-, 2009 WL 2986415, at *6 (N.D. Ga. Mar. 21, 2009) ("Rule 703 . . .

7    does not permit an expert to simply parrot the opinions of other experts."). However, as

8    Medvidovic is not offering an infringement opinion, his reliance on the opinions of other experts

9    does not amount to "parroting" these experts. It is "reasonable to expect that experts will rely on

10   the opinion of experts in other fields as background material for arriving at an opinion." *Fujifilm*,

11   2015 WL 1737951, at *4. I therefore DENY Sophos's motion to exclude Medvidovic's

12   infringement testimony – this motion is moot as Medvidovic is not offering such testimony.

13        Sophos also moves to exclude Medvidovic's "superficial analysis of Sophos's marketing

14   documents." Sophos Mot. 12. Sophos points to *Blue Coat* in which the Northern District

15   excluded Medvidovic's opinions as to "what Defendant thought about Plaintiff's patents" but

16   allowed testimony on "the objective 'technical merits' of Plaintiffs patents." 2015 WL 4272870,

17   at *3. *Blue Coat* does not assist Sophos here as Medvidovic is not offering opinions on Sophos's

18   subjective thoughts on Finjan's patents but is instead offering an opinion on the importance and

19   technical value of various aspects of Sophos's products. As noted in *Blue Coat*, Medvidovic can

20   testify to "the objective 'technical merits' of Plaintiffs patents." Medvidovic's analysis includes a

21   review of Sophos's documents, including marketing materials, which address the technical value

22   of various aspects of the Sophos products. Finjan Oppo. 12. Sophos is free to cross-examine

23   Medvidovic on the sufficiency of this evidence in forming his opinions. I DENY Sophos's motion

24   to exclude Medvidovic's testimony as it relates to Sophos's marketing materials.

25        **B.  Sophos's *Daubert* Motion No. 3 to Preclude Dr. Bims From Providing a Tutorial**

26   **of the Technology**

27        Sophos moves to exclude Bim's tutorial of the technology on the grounds that such an

28   explanation is unnecessary and will not assist the trier of fact. Sophos Mot. 13. Sophos cites to

United States District Court
Northern District of California

22

1  my opinion in *Fujifilm*, *in* which I excluded portions of Bim's report that related to the history of

2  the relationship between the parties because that testimony was a "factual narrative which a lay

3  juror [was] equally as capable of constructing."  2015 WL 757575, at *27.  In contrast, here Finjan

4  offer's Bim's testimony to offer a technical overview of the technology that is the focus of this

5  case.  Finjan Oppo. 13.  Bim's expertise may assist the jury in understanding complex

6  technologies that many lay jurors are likely unfamiliar with.  As I believe Bim's technology

7  tutorial will assist the jury I DENY Sophos's motion to exclude Bim's technology tutorial.

8        **C.  Sophos's *Daubert* Motion No. 4 to Preclude Dr. Cole's and Dr. Mitzenmacher's**

9  **Testimony**

10         **1.  Construction of "Database"**

11        In the Claim Construction Order, I construed the term "database" as used in the '494 and

12  '926 patents to mean "[1] a collection of interrelated data [2] organized according to a database

13  schema [3] to serve one or more applications."  Claim Construction Order at 3-7 (Dkt. No. 73).

14  Sophos contends that Drs. Cole and Mitzenmacher fail to explain how any of the alleged databases

15  in the accused products satisfy this definition, and that their opinions that the accused products

16  contain databases are therefore inadmissible.  Sophos Mot. 15-17.

17        Sophos is right that Drs. Cole and Mitzenmacher do not always explicitly set out how the

18  alleged databases in the accused products satisfy each aspect of the Court's construction.  But

19  Sophos does not identify a single instance where either expert either applies an incorrect

20  construction or relies on a component that does not qualify as a "database" under the Court's

21  construction.  *See id.*  This separates this case from those cited by Sophos, each of which involved

22  an expert who had explicitly applied the wrong construction.  *See Liquid Dynamics Corp. v.

23  Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming district court's decision to

24  "exclud[e] . . . expert opinion evidence as irrelevant because it was based on an impermissible

25  claim construction"); *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-

26  WHO, 2014 WL 4272771, at *5 (N.D. Cal. Aug. 28, 2014) (excluding testimony of plaintiff's

27  expert on the ground that it was "based on [plaintiff's] rejected construction of 'systematic

28  convolutional coding'"); *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, No. 03-cv-05669-

1    JW, 2007 WL 2429412, at *3 (N.D. Cal. Aug. 23, 2007) (striking portion of expert report that

2    "does not comply with the Court's construction of the phrase 'predetermined time period'").  That

3    is not the situation here.

4           To the extent that Sophos means to argue that Drs. Cole and Mitzenmacher's testimony on

5    the "database" limitation is insufficiently detailed, I agree with Finjan that any deficiencies in the

6    experts' testimony should be addressed through cross-examination and competing evidence, not

7    exclusion.  This portion of Sophos's *Daubert* motion is DENIED.

8                     **2.  Infringement of the '780 and '580 Patents**

9           Sophos asserts that Mitzenmacher fails to explain how the accused products satisfy the

10   "fetching" limitation of claims 9 and 18 of the '780 patent, and that Cole similarly fails to explain

11   how the accused products satisfy the "second security computer" limitation of claim 1 of the '580

12   patent.  Sophos Mot. 17-19.  This portion of Sophos's *Daubert* motion is DENIED, not only

13   because it amounts to an improper second summary judgment motion, but because Drs.

14   Mitzenmacher and Cole provide sufficient explanations of the purportedly missing claim

15   limitations for the presence of those limitations to be decided by the jury.  *See, e.g.,* Mitzenmacher

16   Rpt. ¶¶ 221 ("This ID generator performs a hashing function on the Downloadable and

17   components it fetches with the SAV Engine."), 275 (same); Cole Rpt. ¶ 600 ("[T]he first UTM has

18   to communicate with the second UTM to get the server's certificate and to create a proxy signed

19   certificate to communicate with the client computer . . . The first UTM uses the certificate it

20   receives back from the second UTM to create a proxy certificate using the attributes of the

21   destination server certificate.").

22   **IV. SOPHOS, INC.'S MOTIONS *IN LIMINE***

23          **A.  Sophos's Motion *in limine* No. 1 to Preclude Evidence or Argument About Post-**

24                **Grant Proceedings Before the United States Patent & Trademark Office**

25          Sophos moves to exclude evidence about post-grant proceedings before the U.S. Patent &

26   Trademark Office.  Sophos Mot. 19.  Sophos notes that the asserted patents were subjected to

27   several inter partes review petitions; petitions to have the Patent Trials and Appeals Board review

28   the patents' validity, which were denied.  *Id.* Sophos notes that the Patent Trials and Appeals

United States District Court
Northern District of California

24

United States District Court
Northern District of California

Board will only allow an inter partes review if it determines there is a "reasonable likelihood" that the petitioner will prevail, and that a decision to deny review or rehearing is not a decision on the merits of the petition and is not based on a full presentation of evidence or argument.  *Id.*  Sophos finally asserts that this evidence should be excluded as (1) many of these petitions were not brought by Sophos, (2) two of the denials for review were on procedural grounds, (3) none of the reviews involved the same prior arts at issue here, and (4) the reexamination of the '844 patent only related to two claims which are not at issue in this litigation.  *Id.*

I recognize that evidence of PTO proceedings may be relevant to Finjan's claims of validity and that courts frequently allow evidence of this kind.  *See e.g.*, *Univ. Elecs., Inc. v. Univ. Remote Control, Inc.*, No. 8:12-cv-00329, 2014 WL 8096334, at *7 (C.D. Cal. Apr. 21, 2014).  However, while these petitions may have some probative value, I believe that this will be far outweighed by likely confusion to the jury.  *See Interdigital Commc'ns Inv. v. Nokia Corp.*, No. 13-10, 2014 WL 8104167, *1 (D. Del. Sept. 19, 2014) (holding that an IPR denial was "of marginal relevance, and the probative value is greatly outweighed by the expenditure of time that would be required to give the jury the full context necessary to fairly evaluate the evidence.").  As I believe it would take a significant amount of time and effort to adequately explain the relevance and limitations of the PTO proceedings to the jury and because I believe there is a substantial risk that the jury will improperly substitute its own judgment for the PTO decisions, I GRANT Sophos's motion to exclude evidence of the PTO proceedings.

**B.  Sophos's Motion *in limine* No. 2 to Preclude Evidence About the Wealth of Sophos's Fact Witnesses**

Sophos moves to exclude evidence about the wealth of Sophos's founders or employees on the grounds that it is irrelevant and likely to prejudice Sophos.  Sophos Mot. 21. Finjan rebuts that the compensation of these witnesses is important to assessing bias, which it asserts is a key issue given that Sophos intends to rely exclusively on these individuals' testimony in support of the public availability of the SWEEP 2.72/InterCheck 2.01 product.  Finjan Oppo. 21.  *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189 (Fed. Cir. 2002) ("Uncorroborated oral testimony by interested parties is insufficient as a matter of law to establish

1   invalidity of a patent.").

2       Contrary to Finjan's assertions, the record does not show that Sophos intends to offer the

3   testimony of these witnesses as the sole evidence of the availability of SWEEP 2.72/InterCheck

4   2.01. *See, e.g.*, Dkt. No. 213 ("Sophos Suppl. Br.") (showing that Sophos plans to offer

5   documents and press releases corroborating its witnesses' testimony on public availability).

6   Further, these individuals' interest in Sophos is already clear from the fact that they co-founded

7   the company, served on the Sophos Board, and currently serve as special advisors to the board.

8   Finjan Oppo. 20.  Given this evidence, further evidence regarding their wealth and compensation

9   is far more likely to be prejudicial than to be probative.  I GRANT Sophos's motion to exclude

10  information regarding Sophos's employees and founders wealth.

11      **C.  Sophos's Motion *in limine* No. 3 to Preclude Evidence That Finjan's Own Use of

12  Sophos Products is Evidence of Direct Infringement**

13      Sophos moves to exclude evidence that Finjan's own expert's use of the Sophos products

14  is evidence of direct infringement.  Sophos Mot. 22.  An expert's use of an infringing patent is not

15  on its own evidence of direct infringement.  *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501

16  F.3d 1307, 1313 (Fed Cir. 2007) (there was "no evidence of direct infringement" where "the sole

17  witness at trial who testified to having used the [product] in an infringing manner was [the

18  plaintiff's expert]").  However, an expert's infringing use, in conjunction with other evidence can

19  offer evidence of direct infringement.  *Lucent*, 580 F.3d at 1318.  Finjan may therefore present this

20  evidence to the jury, along with other evidence, in support of its claim of direct infringement.  I

21  therefore DENY Sophos's motion *in limine* no. 3.

22      **D.  Sophos's Motion *in limine* No. 4 to Preclude Evidence That Finjan's Patents Are

23  a "Suite of Technologies"**

24      Sophos moves to preclude Finjan from characterizing its patents as a "Suite of

25  Technologies" on the grounds that it has no basis for using that term and that the characterization

26  is likely to confuse the jury.  Sophos Mot. 22.  Finjan rebuts that only Medvidovic describes the

27  Finjan patents as a "Suite" and that his characterization is based on his analysis of the technology.

28  Finjan Oppo. 25.  This issue seems to go to the weight of Medvidovic's testimony and the

accuracy of his characterization of the Finjan products.  Accordingly, this issue would be better addressed through cross-examination than by exclusion.  I therefore DENY Sophos's motion *in limine* No. 4.

**E.  Sophos's Motion *in limine* No. 5 to Preclude Evidence About Sophos's Litigation and Arbitration With Third Party Fortinet, Inc.**

Sophos moves to exclude evidence of its prior litigation and arbitration with Fortinet regarding unrelated parties, technologies, and non-patent claims on the grounds that Finjan aims to use this evidence to impugn the character of Sophos and Sophos employees.  Sophos Mot. 24. Finjan admits that it intends to use this evidence to demonstrate an "ongoing pattern by Sophos and Sophos's executives of disregarding other companies and their intellectual property rights." Finjan Oppo. 25.  Finjan's intent to use this evidence as character evidence against Sophos and its executives is improper and impermissible under Federal Rule of Evidence 404.  While Sophos has expressed an intention to use evidence of Finjan's co-pending litigations, Sophos has argued that it intends to use that evidence to demonstrate Finjan's policy of enforcing and licensing its patents, one of the *Georgia-Pacific* factors, and that a limiting instruction may be used to prevent any undue prejudice.  Sophos Oppo. 19.  Finjan has offered no similar explanation or permissible use for this evidence.  I therefore GRANT Sophos's motion *in limine* No. 5.

**V.  REQUEST TO REQUIRE SOPHOS TO ALLOW LIVE ACCESS TO ITS PERFORCE SOURCE CODE REPOSITORY AT TRIAL**

At the pretrial conference, Finjan asked that I order Sophos to allow Finjan's experts to access Sophos's Perforce system at trial.  I asked the parties to submit declarations addressing the burdens and need to do so, particularly in light of my Order of May 24, 2016 limiting the relevant source code for this trial.  Dkt. No. 205.  Having reviewed the declarations, I now DENY Finjan's request.  Mr. McKerchar's representations regarding both the challenges and risks in doing so

were persuasive, and Finjan did not demonstrate the necessity of allowing live access.

**IT IS SO ORDERED**.

Dated: August 22, 2016

WILLIAM H. ORRICK
United States District Judge