1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FINJAN, INC., | Case No.: 14-CV-01197-WHO |
| Plaintiff, | **JURY INSTRUCTIONS** |
| v. | |
| SOPHOS, INC., | |
| Defendant. | |

**FINAL JURY INSTRUCTIONS**

1

# DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

First I will remind you of the instructions I gave in the beginning about evidence and standards for the burdens of proof that apply in this case.

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I may instruct you to accept as proved.

3

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.    Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.    Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asked a question or offers an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may object.  If I overruled the objection, the question was answered or the exhibit received.  If I sustained the objection, the question was not answered, and the exhibit not be received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

6

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.      the opportunity and ability of the witness to see or hear or know the things testified to;

2.      the witness's memory;

3.      the witness's manner while testifying;

4.      the witness's interest in the outcome of the case, if any;

5.      the witness's bias or prejudice, if any;

6.      whether other evidence contradicted the witness's testimony;

7.      the reasonableness of the witness's testimony in light of all the evidence; and

8.      any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think

1   their testimony deserves.

# EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**STIPULATIONS OF FACT**

The parties have agreed to certain facts which I read to you at the beginning of the case.  You should treat these facts as having been proved.

JURY INSTRUCTIONS                                   CASE NO. 14-CV-01197-WHO

## DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions were  taken earlier in the case.  Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

JURY INSTRUCTIONS                                    CASE NO. 14-CV-01197-WHO

1

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

2

3

When a party has the burden of proving any claim or affirmative defense by a preponderance of

4

the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is

5

more probably true than not true.

6

You should base your decision on all of the evidence, regardless of which party presented it.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## SUMMARY OF CONTENTIONS

I will now give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.  As I previously told you, Finjan seeks money damages from Sophos for allegedly infringing the '844, '154, '780, '494, and '926 Patents by making, using, selling, and offering for sale products and methods that Finjan argues are covered by claims 1, 7, and 16 of the '844 Patent; claim 1 of the '154 Patent; claims 9 and 18 of the '780 Patent; claims 1, 10, 14, and 18 of the '494 Patent; and claims 18 and 22 of the '926 Patent.  These are the Asserted Claims.  The products and methods that are alleged to infringe are the UTM Products, Sophos Live Cloud/SophosLabs, and Endpoint/Enduser Protection.

Sophos denies that it has infringed the Asserted Claims and argues that, in addition, the Asserted Claims are invalid  as anticipated, or in other words, not new.

Your job is to decide whether the Asserted Claims of the '844, '154, '780, '494, 'and '926 Patents have been infringed, whether the infringement of the '844 and '780 Patents was willful, and whether those Asserted Claims are anticipated.  If you decide that any claim of the patent has been infringed and is not anticipated, you will then need to decide any money damages to be awarded to Finjan to compensate it for the infringement of that claim of that Asserted Patent.  If you decide infringement of the '844 and '780 Patents was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.

14

**LIMITING JURY INSTRUCTIONS**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other. These instructions are limiting jury instructions. I will inform you of when I am giving a limiting instruction.

15

## TYPES OF PATENT CLAIMS

This case involves two types of patent claims: independent and dependent claims.

An independent claim sets forth all of the elements that must be met in order for a product or process to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, the independent claims are Claims 1 and 43 of the '844 Patent, Claim 1 of the '154 Patent, Claims 9 and 18 of the '780 Patent, Claims 1 and 10 of the '494 Patent, Claim 1 of the '580 Patent, and Claim 22 of the '926 Patent.

The remaining Asserted Claims are dependent claims. A dependent claim does not itself recite all of the elements for the claim but refers to another claim or claims for some of its elements. In this way, the claim "depends" on another claim or claims. A dependent claim incorporates all of the elements of the claims to which it refers. The dependent claim then adds its own additional elements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. In this case, the dependent claims are Claims 7 and 16 of the '844 Patent, Claims 14 and 18 of the '494 Patent, and Claim 18 of the '926 Patent.

16

1

## INTERPRETATION OF CLAIMS

2

Before you decide whether Sophos has infringed the Asserted Claims or whether any Asserted

3

Claim is invalid, you will need to understand the patent claims.  As I mentioned, the patent claims are

4

numbered sentences at the end of the patent that describes the boundaries of the patent's protection.  It is

5

my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

6

7

I have interpreted the meaning of some of the language in the patent claims involved in this case.

8

as follows:

9

"Database" as used in claim 22 of the '926 patent and claims 1 and 10 of the '494 patent is

10

defined as: "a collection of interrelated data organized according to a database schema to serve one or

11

more applications."

12

"Downloadable" means "an executable application program, which is downloaded from a source

13

computer and run on the destination computer."

14

15

You must accept those interpretations as correct.  For any words in the claim for which I have not

16

provided you with a definition, you should apply their common meaning. My interpretation of the

17

language should not be taken as an indication that I have a view regarding the issues of infringement and

18

invalidity.  The decisions regarding infringement and invalidity are yours to make.

19

20

21

22

23

24

25

26

27

28

17

**PRIOR DELAWARE LITIGATION**

This is a limiting instruction.  You were presented evidence during the trial regarding a prior patent litigation where Finjan was a plaintiff, and Sophos was a defendant in a Delaware case.  That case dealt with two of Finjan's patents that are not asserted in this case.  The Delaware case also dealt with different accused products and different prior art.

The Delaware case has no relevance to the facts regarding infringement and validity in this case.  And your decision on those issues must be based on the facts in this case.

But this evidence may be considered for the limited purposes of establishing the history and relationship between Finjan and Sophos and how that relationship would likely impact the royalty price that Sophos would have been willing to pay at the point of the hypothetical negotiation.

You may also consider the Delaware lawsuit as evidence for Sophos to rebut Finjan's claims of willful infringement of the '844 patent and the '780 patent.

**LIMITING JURY INSTRUCTION REGARDING SOPHOS'S PATENTS**

This is a limiting instruction.  You were presented evidence during the trial regarding Sophos' patents.

You are permitted to rely on evidence related to Sophos' patents only for the limited purposes of background information, such as establishing Sophos's background and experience to the extent you find it relevant.  The mere fact that Sophos has its own patents does not absolve it of a finding of infringement or willful infringement.  The fact that Sophos has a patent does not mean that it has a right to use Finjan's patented technology. You must weigh all the evidence and facts surrounding the alleged infringement.

**INFRINGEMENT – BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Finjan has proven that Sophos has infringed one or more of the asserted claims. To prove infringement of any claim, Finjan must establish that it is more likely than not that Sophos has infringed that claim.

# DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent.  A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether Sophos has made, used, sold, offered for sale or imported within the United States a product or method covered by a claim of the Asserted Patents.  If they have, they infringe.  You, the jury, make this decision.

With one exception, you must consider each of the Asserted Claims of the patent individually, and decide whether Sophos' Accused Products infringe that claim.  The one exception to considering claims individually concerns dependent claims.  As I mentioned previously, a dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Whether or not Sophos knew its products or methods infringed or even knew of the patent does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed.  A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following instructions will provide more detail on these two types of direct infringement.

21

**DIRECT INFRINGEMENT: ONE OR MORE SYSTEM COMPONENTS LOCATED**

**OUTSIDE THE UNITED STATES**

Direct infringement of a system claim requires that an accused system include every element recited in the claim.  Finjan contends that infringement of Sophos Live Cloud/SophosLabs occurs in the United States and may also occur outside of the United States.

Sophos is liable for direct infringement of a system claim if Sophos Live Cloud/SophosLabs infringes certain system claims even though some (but not all) of the elements of the claim were located outside of the United States.  For infringement of Sophos Live Cloud/SophosLabs to occur within the United States, Finjan must prove by a preponderance of the evidence that the control of the accused Sophos Live Cloud/SophosLabs system was exercised and the benefit of the system was enjoyed in the United States.

Finjan claims that SophosLabs infringes certain systems claims even though some (but not all) of the accused SophosLabs components are located outside of the United States.  For SophosLabs to infringe a system claim within the United States, Finjan must prove by a preponderance of the evidence that the control of the SophosLabs system was exercised and the benefit of the system was enjoyed in the United States.

**DIRECT INFRINGEMENT: ONE OR MORE ACTIVITIES LOCATED OUTSIDE THE**

**UNITED STATES**

Direct infringement of a method claim requires that each and every step of an accused method be performed within the United States.

**LITERAL INFRINGEMENT**

To decide whether Sophos's Accused Products literally infringe a claim of the Asserted Patents, you must compare the product or method with the asserted patent claim and determine whether every requirement of the claim is included in that product or method.  If so, Sophos's product or method literally infringes that claim.  If, however, Sophos's product or method does not have every requirement in the patent claim, Sophos's product or method does not literally infringe that claim.  You must decide literal infringement for each Asserted Claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in Sophos's Products.  The fact that Sophos's Products also include other steps will not avoid infringement, as long as it has every requirement in the patent claim.

24

# DOCTRINE OF EQUIVALENTS

If you decide that Sophos's products or methods do not literally infringe an asserted patent claim, you must then decide whether those products or methods infringe the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the products or methods can infringe an asserted patent claim if they include parts or steps that are identical or equivalent to the requirements of the claim. If the products or methods are missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the products or methods cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the product or method has either an identical or equivalent part or step to that individual claim requirement.

A part or step of a product or method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a part or step of the product or method is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the product or method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product or method is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill

in the field would have known of the interchangeability of the part or step with the claimed requirement. The known interchangeability between the claim requirement and the part or step of the product or method is not necessary to find infringement under the doctrine of equivalents.  However, known interchangeability may support a conclusion that the difference between the part or step in the product or method and the claim requirement is not substantial.  The fact that a part or step of the product or method performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

You may not use the doctrine of equivalents to find infringement if you find that Sophos's products or methods are the same as what was in the prior art before the application for the asserted patent.  Finjan may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the Asserted Patents but not covered by any of its claims.  The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.

JURY INSTRUCTIONS                                                    CASE NO. 14-CV-01197-WHO

## WILLFUL INFRINGEMENT

In this case, Finjan argues that Sophos willfully infringed Finjan's '844 Patent and the '780 Patent.  To prove willful infringement, Finjan must first establish that Sophos infringed a valid claim of the '844 Patent and the '780 Patent.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, Finjan must establish by a preponderance of the evidence that Sophos's infringing conduct was egregious, which includes the "wanton and malicious pirate" who intentionally infringes a patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business.  In deciding whether Sophos acted egregiously, which can include conduct that is willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors:

(1)  Whether Sophos knew, or it was so obvious that Sophos should have known, that its actions constituted infringement of a valid Asserted Patent;

(2) Whether Sophos intentionally copied a product of Finjan covered by the Asserted Patents;

(3) Whether Sophos acted with reckless disregard of the claims of the Finjan's Asserted Patents;

(4) Whether Sophos acted in a manner consistent with the standards of commerce for its industry; or

(5) Whether Sophos tried to cover up its alleged infringement.

## INVALIDITY – BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether Sophos has established that any claims of the Finjan Patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Sophos must establish that it is highly probable that the claim is invalid.

28

**ANTICIPATION**

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of computer software or network development looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Sophos can show that a patent claim was not new:

– if the claimed invention was already publicly known or publicly used by others or on sale in the United States more than one year prior to the date of application for patent in the United States;

– if the claimed invention was already made by someone else in the United States more than one year prior to the date of application for patent in the United States for the asserted claims, if that other person had not abandoned the invention or kept it secret.

**PRIOR ART**

Prior art may include items or products that were publicly known or that have been used or offered for sale, or publications or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application. Prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

JURY INSTRUCTIONS                                    CASE NO. 14-CV-01197-WHO

**DAMAGES – BURDEN OF PROOF**

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Sophos infringed any valid claim of the '844 Patent,'154 Patent, '780 Patent, '494 Patent, and '926 Patent, you must then determine the amount of money damages to be awarded to Finjan to compensate it for the infringement.

However, if you find Sophos has not infringed any of the Finjan patents, or if you find the Finjan Patents are invalid, then no damages are to be determined**.**

If you award damages, the amount of those damages must be adequate to compensate Finjan for the infringement.  A damages award should put Finjan in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate Finjan and not to punish Sophos.

Finjan has the burden to establish the amount of its damages by a preponderance of the evidence. You should award only those damages that Finjan more likely than not suffered.  While Finjan is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Finjan is not entitled to damages that are remote or speculative.

1

**REASONABLE ROYALTY**

2

Finjan is seeking damages in the amount of a reasonable royalty.  A royalty is a payment made to

3

a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a

4

"license."  A reasonable royalty is the payment for the license that would have resulted from a

5

hypothetical negotiation between Finjan and Sophos taking place at the time when the infringing activity

6

first began.  In this case, the parties agree that the hypothetical negotiation would have occurred in March

7

of 2014 when Finjan filed the complaint in this matter.  In considering the nature of this negotiation, you

8

must assume that Finjan and Sophos would have acted reasonably and would have entered into a license

9

agreement.  In determining this, you must also assume that both parties believed the patent was valid and

10

infringed.  Your role is to determine what the result of that negotiation would have been.  The test for

11

damages is what royalty would have resulted from the hypothetical negotiation and not simply what

12

either party would have preferred.

13

14

A royalty can be calculated in several different ways and it is for you to determine which way is

15

the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to

16

determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first

17

determine the "base," that is, the product on which the infringer is to pay.  You then need to multiply the

18

revenue the defendant obtained from that base by the "rate" or percentage that you find would have

19

resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for

20

$1, and the licensee sold 200 nails, the base revenue would be $200.  If the rate you find would have

21

resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times

22

the base revenue of $200.  By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate

23

of 0.05 times the base revenue of $200.  These numbers are only examples, and are not intended to

24

suggest the appropriate royalty rate.

25

26

27

28

If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

In this case Finjan's patents cover one or more components of the Accused Products. It is Finjan's burden to demonstrate what value that component has added to the desirability of the product as a whole and to separate the value of the patented contribution from the value of other parts of the product that are not attributable to the patented invention.

In this case, Finjan and Sophos have introduced evidence of licenses between licensees and licensors. The royalty rate in one or more of those licenses may be considered if it helps to establish the value that is attributable to the patented invention as distinct from the value of other features of Sophos' products.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the Accused Products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

33

## REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by licensees for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)     The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)     The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)     The opinion and testimony of qualified experts.

(15)     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty Sophos would have been willing to pay and that Finjan would have been willing to accept, acting as normally prudent business people.

The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between Finjan and Sophos taking place at a time prior to when the infringement began.

**CO-PENDING LITIGATIONS**

This is a limiting instruction.  You were presented evidence during the trial regarding Finjan's co-pending litigations with other defendants.

You can rely on evidence related to these co-pending litigations only for the limited purpose of the determination of a reasonably royalty under the *Georgia-Pacific* factors.

36

**DATE OF COMMENCEMENT - PRODUCTS**

Damages that Finjan may be awarded by you commence on the date that Sophos has both allegedly infringed and been notified of the patent.  Finjan and Sophos agree that date was March 14, 2014 for the '844 Patent, '154 Patent, '780 Patent and '926 Patent, (the filing date of the Complaint in this matter), and April 8, 2014 for the '494 Patent (the filing date of the Amended Complaint in this matter).

37

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case,

the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

40

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

41

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

*4.0 Appendix*

# GLOSSARY

**Some of the terms in this glossary will be defined in more detail in the instructions you are given. The definitions in the instructions must be followed and must control your deliberations.**

Abstract:   A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment:  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Anticipation:  A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

Assignment:  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Claim:  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

Continuation Application:  A patent application filed during the examination process of an earlier application which has the same disclosure as the original application and does not include anything which would constitute new matter if inserted in the original application.

Continuation-In-Part (C-I-P) Application:  A patent application filed during the application process of an earlier application which repeats some or all of the earlier application and adds matter not disclosed in the earlier application to support the addition of new patent claims.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements:  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.
Embodiment:  A product or method that contains the claimed invention.

Enablement:  A description of the invention that is sufficient to enable persons skilled in the field of the

43

invention to make and use the invention. The specification of the patent must contain such an enabling description.

Examination:  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

Filing Date:  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement:  Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory.  Direct infringement is making, using or selling the patented invention without permission.  Inducing infringement is intentionally causing another to directly infringe a patent.  Contributory infringement is offering to sell or selling an item that is an important component of the invention, so that the buyer directly infringes the patent.  To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common component suitable for non-infringing uses.

Limitation:  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

Office Action:  A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

Patent:  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO):  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art:  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Prosecution History:  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On:  A patent claim "reads on" a device or method when each required part (requirement) of the

claim is found in the device or method.

Reduction to Practice:  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

Reexamination: A process in which a patent is reexamined by the PTO to determine whether one or more of the claims are patentable with respect to submitted prior art which may consist only of prior patents or printed publications.  An "ex parte" reexamination is initiated by the patent holder or a third party, but does not include the further participation of any third party.  An "inter partes" reexamination is initiated by a third party who continues to participate in the proceedings.

Requirement:  A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

Royalty:  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

Specification:  The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.

*5.0 Appendix – Claim Construction Order*

## CLAIM CONSTRUCTION ORDER

| CLAIM TERM | CONSTRUCTION |
|---|---|
| Database | A collection of interrelated data organized according to a database schema to serve one or more applications |
| Downloadable | An executable application program, which is downloaded from a source computer and run on the destination computer. |

JURY INSTRUCTIONS                                    CASE NO. 14-CV-01197-WHO

1

2

**ASSERTED CLAIMS OF THE '844 PATENT**

3

**Claim 1:**      A method comprising:

4

5

receiving by an inspector a Downloadable;

6

generating by the inspector a first Downloadable security profile that identifies
suspicious code in the received Downloadable; and

7

8

linking by the inspector the first Downloadable security profile to the Downloadable
before a web server makes the Downloadable available to web clients.

9

10

**Claim 7:**      The method of claim 1, wherein the Dowloadable includes a JavaScript™ script.

11

12

**Claim 16:**      The system of claim 15[1], wherein the first rule set includes a list of suspicious
operations.

13

14

15

16

17

18

19

20

---

21

**[1] Claim 15:**      An inspector system comprising:

22

23

memory storing a first rule set; and

24

a first content inspection engine for using the first rule set to generate a first Downloadable
security profile that identifies suspicious code in a Downloadable, and for linking the first
Downloadable security profile to the Downloadable before a web server makes the
Downloadable available to web clients.

25

26

27

28

47

1

## ASSERTED CLAIMS OF THE '780 PATENT

2

3    **Claim 9:**    A system for generating a Downloadable ID to identify a Downloadable, comprising:

4

5    a communications engine for obtaining a Downloadable that includes one or more references to software components required to be executed by the Downloadable; and

6

7    an ID generator coupled to the communications engine that fetches at least one software component identified by the one or more references, and for performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID.

8

9

10    **Claim 18:**    A computer-readable storage medium storing program code for causing a computer to perform the steps of:

11

12    obtaining a Downloadable that includes one or more references to Software Components required to be executed by the Downloadable;

13

14    fetching at least one software component identifed by the one or more references; and

15

16    performing a hashing function on the Downloadable and the fetched Software Components to generate a Downloadable ID.

17

18

19

20

21

22

23

24

25

26

27

28

1

**ASSERTED CLAIMS OF THE '926 PATENT**

2

**Claim 18:**    The computer-based method of claim 15[2] wherein the Downloadable includes program

3
script.

4

**Claim 22:**    A system for managing Downloadables, comprising:

5

6
a receiver for receiving an incoming Downloadable;

7
a Downloadable identifier for performing a hashing function on the incoming

8
Downloadable to compute an incoming Downloadable ID;

9
a database manager for retrieving security profile data for the incoming Downloadable

10
from a database of Downloadable security profiles indexed according to Downloadable
IDs, based on the incoming Downloadable ID, the security profile data including a list

11
of suspicious computer operations that may be attempted by the Downloadable; and

12
a transmitter coupled with said receiver, for transmitting the incoming Downloadable

13
and a representation of the retrieved Downloadable security profile data to a
destination computer, via a transport protocol transmission.

14

15

16

17
_____

[2] **Claim 15:**    A computer-based method, comprising the steps of:

18

19
receiving an incoming Downloadable;

20
performing a hashing function on the incoming Downloadable to compute an incoming

21
Downloadable ID;

22
retrieving security profile data for the incoming Downloadable from a database of

23
Downloadable security profiles indexed according to Downloadable IDs, based on the
incoming Downloadable ID, the security profile data including a list of suspicious

24
computer operations that may be attempted by the Downloadable; and

25
transmitting the incoming Downloadable and a representation of the retrieved

26
Downloadable security profile data to a destination computer, via a transport protocol
transmission.

27

28

**ASSERTED CLAIM OF THE '154 PATENT**

**Claim 1:**     A system for protecting a computer from dynamically generated malicious content, comprising:

a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe;

a transmitter for transmitting the input to the security computer for inspection, when the first function is invoked; and

a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input.

JURY INSTRUCTIONS                                    CASE NO. 14-CV-01197-WHO

# ASSERTED CLAIMS OF THE '494 PATENT

**Claim 1:**   A computer-based method, comprising the steps of:

receiving an incoming Downloadable;

deriving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable; and

storing the Downloadable security profile data in a database.

**Claim 10:**   A system for managing Downloadables, comprising:

a receiver for receiving an incoming Downloadable;

a Downloadable scanner coupled with said receiver, for deriving security profile data for the Downloadable, including a list of suspicious computer operations that may be attempted by the Downloadable; and

a database manager coupled with said Downloadable scanner, for storing the Downloadable security profile data in a database.

**Claim 14:**   The system of claim 10 wherein the Downloadable includes program script.

**Claim 18:**   The system of claim Downloadable before a web server makes the Downloadable available to web clients wherein said Downloadable scanner comprises a disassembler for disassembling the incoming Downloadable.